FIRST UNION NATIONAL BANK OF NORTH CAROLINA, ADMINISTRATOR C.T.A., D.B.N., OF THE ESTATE OF SUSAN BORDEN UMPHLETT, DECEASED v. JOHN N. HACKNEY, EXECUTOR OF THE ESTATE AND LAST WILL AND TESTAMENT OF W. W. UMPHLETT, JR.

(Filed 15 December, 1965.)

**1. Husband and Wife § 9—**

The wife has the right in this jurisdiction to sue her husband for negligent injury, and, in the event such injury causes her death, her personal representative is authorized to sue. G.S. 52-10.1, G.S. 28-173.

**2. Descent and Distribution § 1; Death § 8—**

Persons entitled to distribution under the Intestate Succession Act are to be determined at the time of the decedent's death, and where the husband survives the wife only a short time after the accident causing the death of both, and children of the marriage survive, the husband and children are the wife's beneficiaries under the Intestate Succession Act.

**3. Actions § 5; Descent and Distribution § 6—**

Where the husband survives the wife only a short time after the fatal accident proximately caused by the negligence of the husband, there can be no recovery in respect to the share to which the husband or his estate would otherwise be entitled.

**4. Same; Actions § 3; Parent and Child § 2; Death § 3—**

Where the husband survives the wife only a short time after the accident causing the death of both, and children of the marriage survive, *held* the administrator of the wife may maintain an action against the executor of the husband's estate to recover damages for the wrongful death of the wife for distribution to the children. This result is not against public policy as allowing the children to benefit from a wrong committed by their father. Such action is not demurrable for want of adversary parties, nor does it violate the rule that unemancipated minor children may not sue their parent in tort.

**5. Death § 3;   Parties § 2—**

G.S. 28-173 authorizes the personal representative of the deceased to maintain an action for wrongful death in those instances in which the deceased, had he survived the injuries, would have had a right of action, and the statutory distributees of any recovery in such action are not the real parties in interest within the meaning of G.S. 1-57, and the personal representative is not a mere figurehead but has both authority and responsibility and his right of action is not dependent upon the identity of the persons who will be entitled to the recovery.

**6. Pleadings § 12—**

A demurrer admits proper allegations of fact but not conclusions of law, and averment in regard to who are the real parties in interest in the action relates to a legal conclusion not admitted by demurrer.

**7. Evidence § 3—**

It is a matter of common knowledge that car owners customarily purchase automobile liability insurance and that in this State a motorist is required by statute to show proof of financial responsibility as prerequisite to issuance of license.

APPEAL by defendant from *Hubbard, J.,* June 1965 Civil Session of WILSON.

Action to recover damages for wrongful death.

Plaintiff, in brief summary, alleged: On August 26, 1962, Susan Borden Umphlett was a passenger in a 1960 Ford station wagon owned and operated by W. W. Umphlett, Jr., on U. S. Highway No. 64 near Apex. She was fatally injured when the station wagon ran off the highway and crashed into a tree. Negligence of W. W. Umphlett, Jr., in specified particulars, in the operation of the station wagon, proximately caused her death.

Answering, defendant averred a 1960 Ford station wagon occupied by Susan Borden Umphlett and her husband, W. W. Umphlett, Jr., was involved in an accident on U. S. Highway No. 64 near Apex on August 26, 1962, and that Mrs. Umphlett died shortly thereafter. Except as stated, defendant denied, for lack of knowledge or information upon which to form a belief, the essential allegations of the complaint.

By way of further answer, defendant alleged defenses which, in summary, are stated below.

First defense: When Mrs. Umphlett died, W. W. Umphlett, Jr., her lawful husband, survived her; and, if his negligence proximately caused her death, any recovery by plaintiff herein should be reduced by the amount otherwise payable to him (or his estate) as her husband and distributee.

Second defense: Mrs. Umphlett died August 26, 1962, and her husband died on the same day, a short time after the death of his wife. (Note: Defendant's allegations imply and both briefs assert

that Mr. Umphlett died as a result of said accident.) The Umphletts had four minor children, unemancipated, all living in the household of their parents; and, except for the interest of the surviving husband (or his estate) in the wife's estate, these children are the beneficiaries of both estates. It concludes: "As the real parties plaintiffs and defendants are the same, whether in their position as plaintiffs or defendants, no valid final decision can be reached herein, and the action ought, therefore, to be dismissed."

Third defense: The said four children are entitled under the Intestate Succession Act to the proceeds of any recovery herein for the wrongful death of their mother. It concludes: "As the real parties in interest in the action brought by plaintiff are the children of W. W. Umphlett, Jr. and as the action is against the Estate of W. W. Umphlett, Jr., then no valid cause of action exists for this alleged tort."

Plaintiff demurred to and moved to strike said second and third defenses on the ground the facts alleged therein do not constitute a defense to plaintiff's action. Judge Hubbard sustained plaintiff's said demurrer and struck defendant's said second and third defenses. Defendant was granted leave to file an amended answer.

Defendant filed an amendment to his original answer. The answer proper and the first defense are not affected by the amendment. The second and third defenses asserted in the amendment are the same as in the original answer except that each contains this additional allegation: "With the exception of this asserted claim, there are no debts outstanding and unpaid, either for burial expenses or otherwise, on behalf of the Estate of Susan Borden Umphlett, Deceased, or the Estate of W. W. Umphlett, Jr., Deceased."

Defendant then alleged in said amendment a fourth defense which, in summary, is stated below.

Fourth defense: The four unemancipated minor children, who lived in the household of their parents, are the real parties in interest; and such children "have no action at law against their said father, W. W. Umphlett, Jr., or the Estate of their father, W. W. Umphlett, Jr., either in themselves or derivatively."

Plaintiff demurred to and moved to strike said second and third defenses, as amended, and said fourth defense, on the ground the facts alleged therein do not constitute a defense to plaintiff's action. Judge Hubbard sustained plaintiff's said demurrer and struck said defenses in their entirety. Defendant excepted and appealed.

*Gardner, Connor & Lee for plaintiff appellee.*

*Battle, Winslow, Merrell, Scott & Wiley for defendant appellant.*

BOBBITT, J.  Our wrongful death statute, G.S. 28-173, in per-
tinent part provides: "When the death of a person is caused by
a wrongful act, neglect or default of another, *such as would, if the*
*injured party had lived, have entitled him to an action for dam-*
*ages therefor,* the person or corporation that would have been so
liable, and his or their executors, administrators, collectors or suc-
cessors shall be liable to an action for damages, to be brought by
the executor, administrator, or collector of the decedent; . . .
The amount recovered in such action is not liable to be applied as
assets, in the payment of debts or legacies, except as to burial ex-
penses of the deceased, and reasonable hospital and medical ex-
penses not · exceeding five hundred dollars ($500.00) incident to
the injury resulting in death; . . . *but shall be disposed of as*
*provided in the Intestate Succession Act.*" (Our italics.)

In this jurisdiction, a wife has the right to sue her husband and
recover damages for personal injuries inflicted by his actionable
negligence. G.S. 52-10; *Roberts v. Roberts,* 185 N.C. 566, 118 S.E.
9; G.S. 52-10.1. If her death is caused by the actionable negligence
of her husband, G.S. 28-173 creates and authorizes an action by her
personal representative to recover for her wrongful death. *King v.*
*Gates,* 231 N.C. 537, 57 S.E. 2d 765. The only party who may main-
tain such action for the wife's wrongful death is "the executor, ad-
ministrator or collector of the decedent." G.S. 28-173; *Hall v. R.*
*R.,* 149 N.C. 108, 62 S.E. 899; *Graves v. Welborn,* 260 N.C. 688,
690, 133 S.E. 2d 761, and cases cited.

The persons who, under the Intestate Succession Act, G.S. Chap-
ter 29, are entitled to the recovery in a wrongful death action are
to be determined as of the time of the decedent's death. *Davenport*
*v. Patrick,* 227 N.C. 686, 44 S.E. 2d 203; *Cox v. Shaw,* 263 N.C.
361, 139 S.E. 2d 676. If Mrs. Umphlett had died a natural death,
intestate, her husband and children would have been her bene-
ficiaries under the Intestate Succession Act.

Plaintiff did not demur to defendant's alleged first defense. If,
as plaintiff alleges, Mrs. Umphlett's death was caused by the ac-
tionable negligence of her husband there can be no recovery herein
in respect of the share to which the husband (or his estate) would
otherwise be entitled. "Public policy in this jurisdiction, buttressed
by the uniform decisions of this Court, will not permit a wrongdoer
to enrich himself as a result of his own misconduct." *Davenport v.*
*Patrick, supra,* and cases cited; *In re Estate of Ives,* 248 N.C. 176,
182, 102 S.E. 2d 807.

Defendant's second, third and fourth defenses are based on
these allegations: The husband survived the wife. The four children
of the marriage, except as to the interest to which their father (or

---

---

his estate) would be entitled but for his actionable negligence, are the beneficiaries of their mother's estate. They are the persons who, under the Intestate Succession Act, are entitled under G.S. 28-173 to any recovery herein. These four children are also the beneficiaries of their father's estate. With the exception of the claim asserted in this action, "there are no debts outstanding and unpaid, either for burial expenses or otherwise," of either estate.

For present purposes, we treat these allegations as allegations of fact deemed admitted by plaintiff's demurrer. Defendant's allegation that the children are the real parties in interest as plaintiffs and as defendants is a legal conclusion not admitted by plaintiff's demurrer. 3 Strong, N. C. Index, Pleadings § 12, p. 627.

The questions presented are of first impression in this jurisdiction.

Based on his assertion that the children are the real parties in interest as plaintiffs and as defendants, defendant contends the action is in reality an action in which the children are suing themselves, that it cannot benefit the children and that it should be dismissed as futile.

"It is elementary that without adversary parties before it a court is without jurisdiction to render a judgment, and it therefore follows that one person cannot be both plaintiff and defendant in the same action." 39 Am. Jur., Parties § 8. This is in accord with our decision in *Newsom v. Newsom,* 26 N.C. 381, where it is said that a suit and judgment in which the same person is both plaintiff and defendant is an absurdity and can have no legal efficacy. The question is whether this elementary legal principle applies to the facts now under consideration.

Defendant asserts the children are the real parties in interest *as plaintiffs* because they, since there are no outstanding claims for burial, hospital and medical expenses, are the persons who will receive, less expenses of litigation and administration, any amount plaintiff might recover herein. They cite in support of their contention *Davenport v. Patrick, supra,* and *In re Estate of Ives, supra,* in each of which the person entitled to the recovery is referred to as *the real party in interest.* However, the significance of the phrase as used in the cited cases must be considered in the context of the factual situation under consideration.

In *Davenport,* the administrator of the wife's estate instituted the action for wrongful death against the surviving husband. There being no children, the husband, under the applicable statute of distribution then in effect, was entitled to all of the personal estate of the wife. In *Ives,* the intestate, while a passenger in an automobile owned and operated by her son, was killed in a collision.

The administrator and the son's liability insurer compromised the wrongful death claim. It was held that, since the compromise consideration was paid to the administrator in settlement of the son's liability for the alleged wrongful death of his mother, the son was not entitled to share in the distribution of the amount so received by the administrator. As stated above, these decisions are based on the proposition that no person will be permitted to profit from his own wrong. In the present action, it is not alleged or suggested that the children were in any way responsible for the mother's death. Hence, the basic principle on which *Davenport* and *Ives* were decided has no application.

Obviously, the children are not the real parties in interest within the meaning of that term as used in G.S. 1-57. They have no right of action for the death of their mother. *Howell v. Comrs.*, 121 N.C. 362, 28 S.E. 362. The right of action vests in the mother's personal representative. *Graves v. Welborn, supra.*

The personal representative who institutes a wrongful death action is not a mere figurehead or naked trustee but has authority as well as responsibility. See *In re Estate of Ives, supra; McGill v. Freight*, 245 N.C. 469, 474-475, 96 S.E. 2d 438.

Defendant asserts the children are the real parties in interest *as defendants* because they are the beneficiaries of their father's estate. Defendant does not allege that use of any of the general distributable assets of their father's estate would be required to pay, in whole or in part, any judgment plaintiff might recover in this action. Defendant's allegations are silent as to whether the father had purchased a policy of liability insurance sufficient to cover, in whole or in part, his liability, if any, in respect of the claim asserted by plaintiff in this action.

Automobile liability insurance is a fact of present day life which defendant may not ignore. It is a matter of common knowledge that millions of car owners purchase automobile liability insurance. G.S. 20-309 requires every owner of a motor vehicle, as a prerequisite to the registration thereof to show "proof of financial responsibility" in the manner prescribed by G.S. Chapter 20, Article 9A. *Swain v. Insurance Co.*, 253 N.C. 120, 116 S.E. 2d 482. Automobile liability insurance serves two purposes. It protects (1) the injured person and (2) the insured.

A liability policy purchased by the husband-father would constitute a valuable asset. During his lifetime, it would protect him in respect of his personal liability and preserve his general estate from depletion; and, upon his death, such policy would constitute a valuable asset of his estate and safeguard the general assets of

his estate for distribution to the beneficiaries. Absent allegations that the husband-father did not have in force and effect a policy of automobile liability insurance sufficient to safeguard the general assets of his estate from liability, in whole or in part, for the payment of any judgment that might be obtained by plaintiff in this action, it does not appear that use of any of the general distributable assets of the father's estate would be required to pay, in whole or in part, such judgment.

The conclusion reached is that the facts alleged by defendant are insufficient to establish that this is in reality an action in which the children are suing themselves and cannot benefit by a recovery herein.

A second contention advanced by defendant is that the children, beneficiaries of both estates, should not be permitted to receive the distributable assets of their father's estate and also benefit from a recovery in this action. To do so, defendant contends, would permit the children to benefit from their father's wrongful conduct. The contention is without merit.

With reference to the father's estate, the benefits the children may receive therefrom will not be increased by their father's wrongful conduct.

With reference to the mother's estate, the right of action the mother could have maintained, if she had survived, vests in her personal representative. The fortuitous circumstance that those entitled to the recovery under the Intestate Succession Act happened to be the children rather than collateral kin of the decedent is not germane to the administrator's right of action.

In *Brown v. Selby*, 332 S.W. 2d 166 (Tenn.), a *divorced* wife, who had custody of the two children of the marriage, was shot and killed by her former husband. The administrator of her estate brought an action for wrongful death under a Tennessee statute similar in all pertinent respects to ours. The defendant demurred to the declaration (complaint) contending, *inter alia*, the action was in reality an action by the children against the father, not permissible under Tennessee law. On appeal, a judgment sustaining the demurrer was reversed. After reviewing prior Tennessee decisions, Tomlinson, J., said: "If the right of action here asserted is the right of the dead mother, as it is, rather than the right of her children, and if the recovery is in her right, as it is, it would be making a fetish, in this Court's opinion, of the common law rule to hold that her right of action could not be maintained because under the circumstances existing in this case an 'incident' of the recovery had in her right is that her recovery passes to her children."

A third contention advanced by defendant is that the real parties in interest *as plaintiffs* "are the minor, unemancipated children" of Mr. Umphlett, and therefore this action, arising out of an unintentional tort of their father, cannot be maintained against the father's estate. The basis of this contention is that considerations of public policy precludes such an action.

In this jurisdiction, an unemancipated minor child, living in the household of his parents, cannot maintain an action in tort against his parents or either of them. *Small v. Morrison*, 185 N.C. 577, 118 S.E. 12, 31 A.L.R. 1135; *Redding v. Redding*, 235 N.C. 638, 70 S.E. 2d 676. Since, under G.S. 28-173, the personal representative has a right of action only "(w)hen the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured party had lived, have entitled him to an action for damages therefor," it is held that the personal representative of such unemancipated minor child has no right of action against the parent for the wrongful death of such child. *Lewis v. Insurance Co.*, 243 N.C. 55, 89 S.E. 2d 788; *Capps v. Smith*, 263 N.C. 120, 139 S.E. 2d 19; 3 Lee, North Carolina Family Law (Third Edition), § 248, pp. 174-175.

The present action does not involve the right of an unemancipated minor to sue the parent on account of injuries to such child caused by the parent's actionable negligence. It is an action by the administrator of the wife's estate to recover for *her* wrongful death as a result of her husband's actionable negligence. There is no exception or provision in G.S. 28-173 to the effect the personal representative's right to maintain such action depends in any way on the identity of the particular persons who, under the Intestate Succession Act, would be entitled to the recovery.

In *Fowler v. Fowler*, 130 S.E. 2d 568 (S.C.), the question was "whether an action will lie . . . by the administrator of the estate of a deceased mother for her wrongful death against her husband for the benefit of the minor unemancipated children of the parties." The administrator of the estate of the wife-mother brought an action for wrongful death under a South Carolina statute similar in all pertinent respects to ours. In South Carolina, while an unemancipated child has no right of action against his parent for a personal tort "a wife can maintain an action against her husband for personal injuries sustained in an automobile accident." In upholding the right of the administrator to maintain the action for the benefit of the unemancipated minor children, the Court, in opinion by Taylor, C.J., said: "The Legislative intent is clear in Section 10-1951 to provide a right of action for wrongful death in

all situations where the deceased could have maintained an action for personal injuries *if he or she had survived.* To exclude the instant action from the terms of the statute would amount to our writing therein conditions which the Legislature failed to include, which we are not permitted to do." (Our italics.) Again: "The right to maintain the action for wrongful death is granted irrespective of the beneficiaries named, if the act was such as would, if death had not ensued, have entitled the injured person to maintain an action therefor."

In *Minkin v. Minkin,* 7 A. 2d 461 (Pa.), the plaintiff, a minor, suing by his next friend, brought the action against his mother to recover for the death of his father, alleged to have resulted from the mother's negligent operation of an automobile. The Pennsylvania statute provided that certain persons, including children of the decedent, could institute and maintain an action for the wrongful death of the parent. Whether the action could be maintained was considered in the light of the Pennsylvania rule that it was against public policy to permit an unemancipated minor to sue his parent in tort on account of personal injuries. A divided Court upheld *the minor's* right to maintain the wrongful death action. In the opinion for the Court, Linn, J., said: "On the face of the statutes, then, the plaintiff, a minor child of the deceased father, is entitled to the share specified. The legislature made no exceptions, such as defendant would imply, to the effect that the child shall be deprived of the benefit of the statute when the surviving parent is the tortfeasor, or if the suit conflicts with a rule at times theretofore prohibiting suits disruptive of the family relation. The words of the conjectured exception are not found in the statute, and as it is complete without them, we are not authorized to add them."

In *Heyman v. Gordon,* 190 A. 2d 670 (N.J.), a different conclusion was reached. Gordon, the defendant, was operating a car in which his wife and their 13-year-old son were passengers. The wife died as a result of a collision. The action against the surviving husband-father was instituted by the administrator of the wife's estate for the sole benefit of the minor son. In a four to three decision, it was held that "the substance of the action is a claim for damages for the benefit of an unemancipated child against his parent" and that such action could not be maintained. While not the basis of decision, it was noted that, under the New Jersey statute, the right to maintain a wrongful death action depends upon whether the decedent could have maintained an action, had she lived, for an injury caused by the wrongful act or omission, and that, "for reasons of policy primarily based on the family relation-

ship," New Jersey did not permit one spouse to sue the other for injuries negligently inflicted. Significantly, the majority opinion states: "Where the policy reason has disappeared, as for example because of the death of the defendant spouse, the reason for the bar is gone and the action is permitted against the latter's estate. *Long v. Landy,* 35 N.J. 44, 171 A. 2d 1 (1961)." The dissenting opinion cites and quotes from *Long v. Landy, supra,* with emphatic approval, relying thereon in part as basis for the dissent.

In *Brown v. Selby, supra,* where the defendant had shot and killed his divorced wife, the court rejected the contention that the wrongful death action instituted by the administrator of her estate, being for the benefit of the defendant's minor children, was barred by the rule that a minor may not maintain an action in tort against his father. After noting that "(t)he common law personal immunity rule which protects a father from a tort action by his minor child is based solely upon the public policy of preserving domestic peace and tranquillity in the family," the opinion states: "In the instant case this father has destroyed the domestic peace and tranquillity of the family. He has forfeited his right to the custody of these children, and has murdered their mother to whom their custody was awarded. The repose of that family cannot be subserved by forbidding this action against him for his wrong. In this case, therefore, the reason for the common law rule does not exist. Where the reason fails the rule should not apply."

In *Fowler, Minkin, Heyman* and *Brown,* discussed above, the action was instituted against *a living parent.* The present action is against the estate of a husband-father who died shortly after the tragic accident and as a result thereof.

"The first judicial precedent for the rule denying recovery in *living* family relationships was *Hewlett v. George,* 1891, 68 Miss. 703, 9 So. 885, 13 L.R.A. 682." *Davis v. Smith,* 126 F. Supp. 497. The following from *Hewlett* is quoted in *Small v. Morrison, supra,* by Stacy, J. (later C.J.): "But, so long as the parent is under obligation to care for, guide, and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as this can be maintained. The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent." As stated in *Gillikin v. Burbage,* 263 N.C. 317, 139 S.E. 2d 753: "This rule implements a public policy protecting family unity, domestic serenity, and parental discipline."

"In recent years indications have appeared of a growing judicial inclination to depart very materially from the broad doctrine that an unemancipated minor cannot maintain a tort action against his parent." Annotation, 19 A.L.R. 2d 423, 427. In *Dunlap v. Dunlap,* 150 A. 905, 71 A.L.R. 1055, after a full review of prior cases, Chief Justice Peaslee, speaking for the Supreme Court of New Hampshire, said: "Such immunity as the parent may have from suit by the minor child for personal tort arises from a disability to sue, and not from lack of violated duty. This disability is not absolute. It is imposed for the protection of family control and harmony, and exists only where a suit or the prospect of a suit might disturb the family relations. Stated from the viewpoint of the parent, it is a privilege, but only a qualified one." In *accord: Brennecke v. Kilpatrick,* 336 S.W. 2d 68 (Mo.); *Palcsey v. Tepper,* 176 A. 2d 818 (N.J.); *Davis v. Smith, supra.*

The present case is distinguishable factually from *Strong v. Strong,* 267 P. 2d 240 (Nev.), and *Durham v. Durham,* 85 So. 2d 807 (Miss.). *Strong* and *Durham* were suits by minors, by guardian *ad litem* and next friend, respectively, against *a living parent* to recover damages resulting from the wrongful death of the other. In each, it was held that the pertinent wrongful death statute did not repeal the common law immunity of a parent from suit by an unemancipated child.

Here, by reason of the death of the mother and father, there exists no child-parent or other family relationship that may be disturbed by this action. In this factual situation, according to the weight of authority and sound reason, the immunity doctrine has no application.

In *Shumway v. Nelson,* 107 N.W. 2d 531 (Minn.), an action was instituted against her father's estate by a trustee for his minor daughter to recover for the wrongful death of her mother. Both the wife-mother and the husband-father were killed as a result of an automobile accident allegedly caused by the negligence of the husband-father. In upholding the plaintiff's right to recover, it was held that the Minnesota common law rule that "a wife could not maintain an action to recover damages against her husband for injuries received as a result of his tortious conduct" did not preclude a statutory action for the benefit of her next of kin under the Minnesota wrongful death statute. With reference to the Minnesota common law rule "that an unemancipated minor child may not maintain an action against his parents for damages on account of their negligence," the Court rejected the defendant's contention

that said rule operated as a bar to the action brought on her behalf against her father's estate.

In *Krause v. Home Mutual Insurance Co.,* 112 N.W. 2d 134 (Wis.), Mrs. Krause was a guest-passenger in an automobile operated by her husband. The Krause car was involved in a collision that resulted in the immediate death of Mrs. Krause and in the death five days later of Mr. Krause. It was held that the children, under the Wisconsin wrongful death statute, could maintain an action against the father's estate.

In *Brennecke v. Kilpatrick, supra,* a six-year-old minor, represented by her father as next friend, instituted an action against the estate of her mother. A car operated by the mother, in which the minor daughter was a passenger, collided with a truck. As a result, the mother was killed instantly and the minor daughter was injured. The appeal was from an order in which the trial court had dismissed the petition (complaint), basing its decision on the Missouri rule that "an unemancipated child could not maintain a suit against its living parent" based on negligence. However, the Supreme Court, in reversing, stated: "The rule is not an absolute one . . . but generally exists or is adhered to only when the court concludes that to hold otherwise would seriously disturb the family relations and thus be contrary to public policy. The immunity of the parent usually has been predicated upon the premise that to allow such an action against a parent would either disrupt the tranquillity of the domestic establishment or subvert parental control and discipline." The Court concludes: "It is our view that where an unemancipated minor child by next friend is suing the representative of his deceased parent's estate for his negligently inflicted personal injury by that parent public policy does not prohibit such suit and recovery. The doctrine of intrafamily immunity from such suits expires upon the death of the person protected and does not extend to the decedent's estate for the reason that death terminates the family relationship and there is no longer in existence a relationship within the reasonable contemplation of the doctrine. Although there may be immunity from suit between parent and child during life, the immunity does not extend to the personal representative of the deceased parent. The rationale of the rule of parental immunity has been extinguished by the death of the parent and neither logic nor justice persuades that it remain."

In *Palcsey v. Tepper, supra,* unemancipated minors were guest passengers in an automobile operated by their father. The car was involved in a collision that resulted in the death of the father and in injuries to the children. An action was instituted in behalf of the

minors by guardian *ad litem* against the executrix of their father's estate for damages caused by the father's actionable negligence. The question presented was stated as follows: "Does the doctrine of immunity from suit between unemancipated minor children and their parents, which exists during the life of the family relationship, extend to and protect the personal representative of the deceased member of the family?" The court stated: ". . . the question is not one of the absence of duty owed by a parent to his minor child, but instead is one of immunity or disability from suit. The cause of action exists as of the date of the wrongdoing but the courts have interposed a shield of immunity between the family members where the family relationship is still intact." Again: "It is self-evident that if the family relationship no longer exists, having been dissolved by death, then the public policy consideration which supports the rule of immunity likewise no longer exists."

In *Davis v. Smith, supra,* a decision of the United States District Court for the Eastern District of Pennsylvania, it was held that, under Pennsylvania law, the doctrine of immunity of spouses from suit against each other and the doctrine of the immunity of a living parent from suit by an unemancipated child were defenses personal to a living husband and father and were not available after his death. The opinion contains a full discussion of the reasons underlying the immunity doctrines.

In *Ruiz v. Clancy,* 162 So. 734 (La.), it was held that, notwithstanding the wife could not have sued her husband for injuries she sustained on account of his negligent operation of an automobile, the children, by their tutrix, could sue the father's administrator in succession for "the loss of the companionship and care and affection of their mother, and for the grief which the sudden death of their mother brought upon them." A provision of the Louisiana Code of Practice provided: "Children, as long as they are subjected to paternal power, that is to say, while their fathers and mothers are living and they not enamcipated, can not bring suit against them." In view of the father's death, presumably as a result of the same accident, it was held the action was not barred by the quoted statute. Decision was based on the ground that such action would not impair or affect in any way family harmony or parental authority.

In *Long v. Landy,* 171 A. 2d 1 (N.J.), referred to in *Heyman v. Gordon, supra,* the husband was operating a car in which the wife was a passenger. As a result of a collision, the husband died (two days after the accident) and the wife sustained personal injuries. It was held that, while under New Jersey law, "one spouse may not

sue the other in tort," the widow was entitled to bring a tort action against her deceased husband's estate. As stated by Haneman, J.: "The marital status which has been dissolved by death cannot be deleteriously affected by an interspousal action. The public policy which seeks to prevent disharmony in the home has no further factual basis, there being no matrimonial harmony to protect."

*Castellucci v. Castellucci,* 188 A. 2d 467 (R.I.), is at variance with the decisions discussed above. Mr. Castellucci was the operator of a car in which his wife and two minor sons were riding. As a result of a collision, both parents were killed and the sons were injured. Three actions were instituted against the estate of the husband-father, one by the administrator of the estate of the wife-mother and one in behalf of each minor son. It was held the widow's administrator could not recover because under the Rhode Island statute no action could be maintained "except in cases where had the deceased person lived he would have had an action." It was held that the actions of the minors were barred by the Rhode Island rule "that a minor child could not maintain an action in tort to recover damages against his father." The Court rejected plaintiffs' contention that this rule "should not be extended so as to preclude a minor child from bringing such action against the estate of his deceased parent," on the ground "that a declaration of public policy in this area should preferably be made by the general assembly." It it noteworthy, as indicated above, that the immunity rule, stemming from *Hewlett v. George, supra,* is based on policy considerations declared by the Court rather than by legislative enactment.

Since the policy reasons on which the immunity doctrine rests do not apply to the factual situation under consideration, we are of opinion, and so hold, that the immunity doctrine is of no avail to defendant in this action.

For the reasons stated, the conclusion reached is that the judgment of the court below must be and is affirmed.

Affirmed.