Lonnie **MILLER**, Administrator of the Estate of Albert Miller, Jr., deceased and Albert Miller, Sr., Appellants,

v.

Ely J. **PERRY**, Jr., Appellees.

No. 13858.

United States Court of Appeals, Fourth Circuit.

Feb. 9, 1972.

Douglas P. Connor, Mount Olive, N. C. (Darris W. Koonce, Trenton, N. C., on brief), for appellants.

A. H. Jeffress, Kinston, N. C. (Whitaker, Jeffress & Morris, Kinston, N. C., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and WINTER and RUSSELL, Circuit Judges.

HAYNSWORTH, Chief Judge:

The question is the existence of diversity jurisdiction in an action under the North Carolina Wrongful Death Act (N.C.Gen.Stat. § 28–173) to recover for the benefit of nonresident distributees for the death of a nonresident, brought by a North Carolina ancillary administrator against North Carolina defendants. We conclude that the citizenship of the administrator does not defeat diversity and reverse the order of the District Court dismissing the action, 307 F.Supp. 633.

Albert Miller, Jr., a minor citizen of Florida, died in North Carolina, allegedly through the fault of the Perrys. His father was duly qualified in Florida as administrator of his estate and subsequently brought suit in his representative capacity in the United States District Court for the Eastern District of North Carolina under the Wrongful Death Act.[1]

---

1. N.C.Gen.Stat. § 28–173 provides in pertinent part as follows:

"When the death of a person is caused by a wrongful act, neglect or default

The District Court dismissed the action on its own motion on the ground that the plaintiff was not qualified in North Carolina as the administrator of the decedent's estate. As a nonresident, he lacked legal capacity to qualify, since North Carolina law requires that the administrator in such cases must be a resident of the state.[2] The Court concluded that the action must be dismissed under our decision in Fennell v. Monongahela Power Company, 4 Cir., 350 F.2d 867, upholding the applicability. in federal courts of a similar requirement of the state of West Virginia.

Thereafter, and within the statutory period of limitations, Lonnie Miller, the grandfather of the decedent and a resident of North Carolina, was duly qualified pursuant to N.C.Gen.Stat. § 28–1(4) as ancillary administrator. A second action was then brought in the District Court by him in which the father, as principal administrator, joined. This action, assigned to a different judge, was also dismissed. The Court held that the resident ancillary administrator was the real party in interest in the litigation and dismissed the action for want of diversity of citizenship. The plaintiffs appealed from that dismissal.

■ In several cases we have sustained the validity of state statutes requiring that actions for wrongful death be prosecuted in the name of a resident representative and have held the requirement applicable in the federal courts.[3] Heretofore, however, we have not been confronted with a contention that such statutes, in light of the federal rules for determining diversity, may not be applied under the Supremacy Clause when the effect is to defeat federal jurisdiction. Nor have we had occasion to consider whether the resident representative is the real party in interest, whose citizenship controls the diversity determination under currently accepted federal standards.

Had North Carolina attempted explicitly to limit the availability of her Wrongful Death Act to actions in her own state courts, there may be little doubt that we would find the limitation unconstitutional under the Supremacy Clause, as Wisconsin's attempt was, long ago.[4]

It is said that the conjunction of North Carolina's requirements that actions for wrongful death be prosecuted in the name of a personal representative and that an administrator may not be appointed unless he is a resident of North Carolina achieves the same result, if the noncitizen decedent dies intestate. It does, of course, if we assume that the rule of Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233, is inflexible and constitutionally mandated. The result is that access to a district court in North Carolina is denied to a wrongful death claimant, whose intestate decedent died of injuries sustained in that state, if the decedent

of another, such as would, if the injured party had lived, have entitled him to an action for damages therefor, the person or corporation that would have been so liable, and his or their executors, administrators, collectors or successors shall be liable to an action for damages, to be brought by the executor, administrator or collector of the decedent * * *. The amount recovered in such action is not liable to be applied as assets, in the payment of debts or legacies [except for burial expenses and medical expenses incident to the fatal injury] but shall be disposed of as provided in the Intestate Succession Act."

2. N.C.Gen.Stat. § 28–8 provides in pertinent part:

"The clerk shall not issue letters of administration or letters testamentary to any person who, at the time of appearing to qualify—

 * * * * *

"(2) Is a nonresident of this State; but a nonresident may qualify as executor."

3. Fennell v. Monongahela Power Co., 4 Cir., 350 F.2d 867; Grady v. Irvine, 4 Cir., 254 F.2d 224; Holt v. Middlebrook, 4 Cir., 214 F.2d 187; Rybolt v. Jarrett, 4 Cir., 112 F.2d 642.

4. Railway Company v. Whitton's Administor, 1871, 13 Wall. (80 U.S.) 270, 20 L.Ed. 571. See also, Markham v. City of Newport News, 4 Cir., 292 F.2d 711.

was a citizen of another state, while preserving access to federal courts if the decedent was a North Carolinian and the defendant a noncitizen.

The result, however, is not dependent alone upon the conjunction of North Carolina's requirements. However minimal North Carolina's interest in her requirement that an administrator be a resident,[5] her statutes do not foreclose access to a federal court on behalf of the beneficiaries of a noncitizen dying of injuries sustained by the alleged fault of a North Carolinian. The result flows only when *Mecom* is injected as an inflexible, essential ingredient. If its rule is not constitutionally required, if it is subject to federal change by congressional action or judicial decision, North Carolina's statutory scheme should not bear the brunt of the charge of invidious discrimination. If the federal courts, in determining the presence of a controversy between citizens of different states as a foundation of their jurisdiction, are free to look to congressional acts or their own decisions to determine the jurisdictional significance of the citizenship of the decedent, his beneficiaries or personal representatives, a state is not to be faulted for narrow limitations on the appointment of a personal representative. If the presence of any limitation of federal diversity jurisdiction is dependent upon an open federal choice to hinge federal determination of diversity upon the citizenship of the representative rather than upon other alternates, it cannot be attributable entirely to the state statutes. Unless *Mecom* is both a viable and constitutional imperative, therefore, we may give full force and recognition to North Carolina's statutes and her interests without attribution to her of impermissible dominion and control over federal jurisdiction.

*Mecom* was an extraordinary case. Three times an Oklahoma widow and administratrix of her husband's estate filed an action for wrongful death in an Oklahoma state court against the Louisiana defendant. Each time the defendant removed the action to the federal court, and each time the plaintiff secured a voluntary dismissal. Through her lawyer, she then secured the services as administrator of a Louisiana citizen, who promptly appointed her his Oklahoma delegate, in whose name she then refiled the wrongful death action in Oklahoma. Again the action was removed, and, after a trial on the merits and judgment for the defendant, the Supreme Court held that a motion to remand to the state court had been erroneously denied. Whether there was diversity of citizenship between the Louisiana defendant and the plaintiff, it said, was determinable by reference to the new representative's Louisiana citizenship rather than to that of the Oklahoma widow or the beneficiaries.

*Mecom*, however, did not decide that the citizenship of the personal representative in wrongful death actions was constitutionally or inflexibly the criterion for ultimate determination of diversity. Its assumption was that the personal representative was clothed with such responsibilities and authority that he, under federal standards, was the real party in interest. That assumption has been greatly undermined by the recent recognition in Kramer v. Caribbean Mills, 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9, that the duties and responsibilities of administrators should be taken into account in federal determinations of the relevancy of the citizenship of such a personal representative to the presence of diversity jurisdiction. Kramer's recognition of a need to re-examine *Mecom*,

---

5. Under North Carolina's Wrongful Death Act, any recovery is not subject to the claims of North Carolina creditors except for expenses for burial services and medical services rendered in connection with the fatal injuries. Here, North Carolina's only real interest is in insuring an honest distribution of the proceeds of any recovery to the statutory beneficiaries. Since the statutory beneficiary here is the father, North Carolina's purpose is little served by requiring someone else to prosecute the action to assure that he will recover the net proceeds.

and the relevance of the roles of administrators, frees us from a blind invocation of *Mecom's* result. At the very least, *Kramer* authorizes attention to the substantive relation of the administrator, the beneficiaries and others to the controversy before an undiscriminating decision that the citizenship of a representative controls the determination of diversity jurisdiction.\

Neither *Mecom* nor its predecessors in the Supreme Court [6] dealt with the significance of the citizenship of a resident administrator reluctantly procured by out-of-state beneficiaries for the sole purpose of compliance with state law. The lower courts, including this one,[7] read it broadly to include a ritualistic control of the result in this kind of situation,[8] but the Supreme Court has not done so, as *Kramer* demonstrates.

*Kramer*, to be sure, did not deal with this situation either. The Court, there, was concerned with the effect of an assignment of a claim by an alien to a citizen of Texas for the purpose of creating diversity of citizenship. Though the validity of the assignment under state law was recognized, it was held improper or collusive within the meaning of 28 U.S. C.A. § 1359 and the assignee's attempted invocation of federal diversity jurisdiction unsuccessful. In its opinion, however, the Court took note of another, popular device for the creation of pretensive diversity, the appointment of an out-of-state representative to prosecute a claim in an otherwise local controversy. It did not condemn the use of that device, for that was not the question in *Kramer*. Indeed, it suggested some differences between an assignment of a claim to a citizen of another state and the appointment of such a person as a personal representative to prosecute a claim. Here, the significance of *Kramer* lies in its statement that the effect, in

the diversity determination, of the appointment of an out-of-state representative is to be found after consideration of his duties and responsibilities and the clear reservation of the question. Earlier, one may have read *Mecom* as holding that the citizenship of the administrator, always and under all circumstances, governed the determination of diversity of citizenship, but such a thought could not survive *Kramer*.

Shortly thereafter, we held in Lester v. McFaddon, 4 Cir., 415 F.2d 1101, that the differences between the two devices were not enough to lead to a different result, and that the appointment of an out-of-state representative solely for the purpose of creating diversity was impermissible or ineffectual. The Second and the Fifth Circuits have since agreed. O'Brien v. Avco Corp., 2 Cir., 425 F.2d 1030; Bass v. Texas Power & Light Co., 5 Cir., 432 F.2d 763; see also, Green v. Hale, 5 Cir., 433 F.2d 324. The Third Circuit had held the appointment device impermissible even before *Kramer*. McSparran v. Weist, 3 Cir., 402 F.2d 867, cert. denied, sub nom. Fritzinger v. Weist, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217. Three Circuits have thus read *Kramer* as having repudiated so much of *Mecom* as may suggest that the citizenship of an administrator, without more, is decisive for diversity purposes.

These decisions deal, of course, with attempts to create diversity, and not, as did *Mecom*, with attempts to defeat it. But we think that the difference is insignificant. *Mecom* did not rest upon the fact that devices to defeat diversity are different from those to create it. It rested on the twin pillars of the earlier views that looking behind the appointment of an administrator to the reality was somehow a collateral attack on the order of appointment, and that inquiry into motive was impermissible. See, Black & White Taxicab & Transfer Co.

---

6. Chappedelaine v. Dechenaux, 8 U.S. (4 Cranch) 306, 2 L.Ed. 629; Childress v. Emory, 21 U.S. (8 Wheat) 642, 5 L.Ed. 705.

7. *See* Grady v. Irvine, 4 Cir., 254 F.2d 224, 228.

8. *See*, however, Thames v. Mississippi, 5 Cir., 117 F.2d 949, in which it was held that a Mississippi administrator's duties were so minimal that his citizenship was irrelevant to a determination of diversity.

v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681. Neither view can survive *Kramer*. If inquiry into the facts surrounding the appointment constitutes a collateral attack on the order making the appointment, that is the end of the matter, and there was no point in holding the question open in *Kramer*. If inquiry into motive is impermissible, the decision in *Kramer* should have gone the other way, since all that appeared on the surface was an assignment valid under state law.

We are obliged to read *Kramer* as injecting a new note of realism into the determination of diversity jurisdiction. Diversity jurisdiction exists for the protection of the noncitizen who is obliged to sue or to be sued in the state of his adversary.[9] It is for that reason that the device of appointing an out-of-state representative has been condemned. It is for that reason that state statutes or decisions that require a noncitizen to appoint an in-state representative should not have the effect of depriving the noncitizen of the federal forum that Congress has provided him.

In every real sense, this is a diversity case. Had the young Floridian survived, he clearly could have held the North Carolina defendants accountable in a federal court. Since his beneficiaries are Floridians, the controversy is no less interstate after his death than before.

We conclude, therefore, that when, as here, a resident ancillary administrator is required to represent the interests of noncitizen beneficiaries by virtue of the laws of the state in which the claim arose, and his duties are as limited as those imposed upon him by North Carolina, the citizenship of the beneficiaries is controlling for diversity purposes.

Our holding does not interfere with whatever interest a state may have in the appointment of one of its own citizens to prosecute the claims of noncitizens. There is not the slightest suggestion that one of those interests is to oblige noncitizens to litigate wrongful death claims in the state courts.

Indeed, when we look beyond the resident ancillary administrator to the beneficiaries for the purpose of making a realistic determination with respect to the presence of diversity, we do no more than what the Supreme Court of North Carolina has done whenever such a look has appeared to be the reasonable and just course.

Thus in Broadfoot v. Everett, 270 N. C. 429, 154 S.E.2d 522, the beneficiaries, not the North Carolina administrator and nominal plaintiff, were held to be the real parties in interest. The action was barred by Pennsylvania's one-year statute of limitations made applicable by N.C.Gen.Stat. § 1–21 unless, "the cause of action originally accrued in favor of a resident of this State." The plaintiff contended that, since the action could be brought only by a North Carolina administrator, it originally accrued in his favor, but the Court recognized that the cause of action accrued at the time of the death of their decedent in favor of the beneficiaries, and that they were the real parties in interest.

The North Carolina Supreme Court has reached a similar conclusion in other factual contexts. Davenport v. Patrick, 227 N.C. 686, 44 S.E.2d 203; In re Ives' Estate, 248 N.C. 176, 102 S.E.2d 807. It did not do so in First Union National Bank of North Carolina v. Hackney, 266 N.C. 17, 145 S.E.2d 352, when to have done so would have produced an irrational result. That court later found no obstacle in *Hackney* to its conclusion in *Broadfoot*, that in resolving problems in situations somewhat akin to this one, the beneficiaries, rather than the administrator, are to be treated as the real parties in interest.

---

9. To be sure, 28 U.S.C. § 1332 does not perfectly reflect this purpose. But see proposed §§ 1301, 1302 of the A.L.I. study.

A.L.I., Study of the Division of Jurisdiction between State and Federal Courts, Official Draft 1969.

These state cases illustrate the appropriateness of *Kramer's* realistic approach and the emptiness of the notion, underlying *Mecom,* that failure to attribute controlling significance to the citizenship of the administrator in determining diversity would amount to a collateral attack upon the state court's appointment of him or a denigration of it. There is simply no room in federal resolution of a purely federal question for attribution to a state court's appointment of an administrator of broad emanations which the state courts need not, and, demonstrably in this instance, do not recognize. Thus we held in Lester v. McFaddon, 4 Cir., 415 F.2d 1101, that the state court's appointment was only an authorization of the administrator to prosecute an action for wrongful death in an appropriate forum without beclouding a federal determination of the question of the appropriateness of a federal forum in particular instances.[10] We give the state appointment its full due where, by virtue of it, we permit the federal action to be prosecuted in his name and, in harmony with state law, will not permit it to proceed otherwise.

We conclude, therefore, that in determining the presence of diversity of citizenship when state law requires that the action be prosecuted in the name of a resident administrator, the citizenship of the beneficiaries, rather than that of the administrator, is relevant, and that such diversity is present here.

We approach, without achieving, the purpose of the proposal of the American Law Institute.[11] It proposes a more satisfactory solution. It would attribute the citizenship of a decedent to any representative authorized to bring an action for his wrongful death.[12] That proposal would avoid problems which may arise if the beneficiaries are of diverse citizenship or if their citizenship is different from that of their decedent, or if the problem arises in a dissimilar context from that presented here. It recognizes that if an action for personal injury by a surviving victim is appropriate for federal adjudication, the interstate character of the controversy is not significantly affected by his death from his injuries. Its rule is one which may be simply and economically administered to reach a rational conclusion. Until enactment of the statute recommended by the Institute, an event much to be hoped, however, we deem ourselves limited to the less satisfactory resolution of the problem we now reach: To hinge the diversity determination to the citizenship of the wrongful death action beneficiaries, rather than to that of their representative.

We conclude that the action should have been allowed to proceed to trial in the District Court.

Reversed and remanded.

---

10. *See also*, O'Brien v. Avco Corporation, 2 Cir., 425 F.2d 1030, 1034.

11. A.L.I., Study of the Division of Jurisdiction between State and Federal Courts, Official Draft 1969 § 1301(b) (4).

12. There is similar attribution of the citizenship of an infant or incompetent to his representative.