603 F.2d 30
 CA 79-2942 Samuel J. BETAR, Public Administrator of Cook
County, and Administrator of the Estate of
Raghubir Dutt Law, Deceased, Plaintiff-Appellant,
v.
DE HAVILLAND AIRCRAFT OF CANADA, LTD., a Canadian
Corporation, Defendant-Appellee.
 No. 78-1911.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 5, 1979.
Decided Aug. 3, 1979.
 
 Leonard M. Ring, Chicago, Ill., for plaintiff-appellant.
 Hugh C. Griffin, Lord, Bissell & Brook, Chicago, Ill., for defendant-appellee.
 Before PELL and BAUER, Circuit Judges, and HOFFMAN, Senior District Judge.*
 PELL, Circuit Judge.
 
 
 1
 The plaintiff, Samuel J. Betar, Public Administrator of Cook County and administrator of the estate of Raghubir Dutt Law, appeals from final orders in the district court denying his motion to remand this cause to the Circuit Court of Cook County, Illinois, and granting the motion of the defendant, De Havilland Aircraft of Canada, Ltd. (Ltd.), to dismiss for lack of personal jurisdiction. The plaintiff argues that the removal of this cause was improper because it is not within the original jurisdiction of the district court, as required by the removal statute, 28 U.S.C. § 1441(a). Specifically, the plaintiff argues that the district court improperly looked to the citizenship of the named fiduciary plaintiff instead of that of the statutory beneficiaries under the Illinois Wrongful Death Act, Ill.Rev.Stat. ch. 70, § 1 Et seq., in determining that it had diversity jurisdiction. The plaintiff also challenges the district court's decision that it did not have personal jurisdiction over the defendant, but, in light of our disposition of the plaintiff's first argument, we do not reach this issue.
 
 
 2
 The decedent, Raghubir Dutt Law, an Indian national, was killed in 1976 when an airplane manufactured by the defendant crashed in Zambia, Central Africa. On April 27, 1977, the plaintiff was appointed administrator of the estate of the decedent. The record shows no assets in the estate other than the cause of action for wrongful death. On April 28, 1977, the plaintiff filed an action under the Illinois Wrongful Death Act in the Circuit Court of Cook County against the defendant, Ltd., and its subsidiary, De Havilland Canada, Inc., (Inc.), a Delaware corporation with offices in Rosemont, Illinois. On the same day, Crispin Maunder, a British subject injured in the same crash, filed an action in the same court against the same defendants. Ltd. petitioned for removal of both actions to the federal district court for the Northern District of Illinois. Removal was based on diversity of citizenship, Ltd. asserting that Inc. was a "sham" defendant. The plaintiffs joined in the motion to dismiss Inc., leaving Ltd. as the only defendant. Both plaintiffs moved to remand the action to the state court. The Maunder action was remanded on the ground that the court was without jurisdiction, the suit being between aliens: Maunder, a British subject, and Ltd., a Canadian corporation. Basing its determination on the citizenship of the personal representative in the Betar action, the district court concluded that there was diversity between the plaintiff, an Illinois citizen, and the defendant, and denied Betar's motion to remand. The plaintiff, arguing for remand, contends that 28 U.S.C. § 1359 requires that the citizenship of the personal representative be disregarded and that the determination of jurisdiction be based on the citizenship of the Wrongful Death Act beneficiaries, the widow and children of Raghubir Dutt Law, all Indian nationals.
 
 
 3
 The general rule is that the citizenship of the real party in interest is determinative in deciding whether the district court has diversity jurisdiction.
 
 
 4
 The citizenship rule testing diversity in terms of the real party in interest is grounded in notions of federalism. It is based upon the principle that a primarily local controversy should be tried in the appropriate state forum and that nominal or formal parties, who do not have a significant interest in the outcome of the litigation, should not be able to use the federal courts.
 
 
 5
 C. Wright & A. Miller, Federal Practice & Procedure § 1556 at 711. Under Fed.R.Civ.P. 17(a) the plaintiff personal representative would be defined as the "real party in interest" in the sense that the action is properly maintained in his name, without need to join the beneficiaries. This rule, however, is merely procedural and does not extend or limit the subject matter jurisdiction of the district court. Fed.R.Civ.P. 82; Lester v. McFaddon, 415 F.2d 1101, 1105 & n.10 (4th Cir. 1969).
 
 
 6
 According to the defendant, however, the substantive rule for determining jurisdiction is identical, citing the decision of the Supreme Court in Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931). In Mecom the plaintiff was an administrator appointed by a state court under the state wrongful death act. The plaintiff-administrator and the defendant were citizens of the same state. The defendant nevertheless attempted to remove the action to federal court on the basis of diversity between the defendant and the statutory beneficiaries under the wrongful death act, arguing that the survivors appointed the administrator for the sole purpose of defeating federal jurisdiction. Noting that state law designated the administrator as named plaintiff in a wrongful death action, the Supreme Court held that the federal court had no jurisdiction because the administrator and the defendant were citizens of the same state. According to the Court, it was "immaterial that the motive for obtaining his appointment and qualification was that he might thus . . . institute an action which could not be . . . removed on the ground of diversity of citizenship." 284 U.S. at 190, 52 S.Ct. at 87. The defendant in the present action argues that Mecom establishes a universal rule directing that the citizenship of an administrator, lawfully appointed by the state court for bringing a wrongful death action, be considered in determining diversity of citizenship jurisdiction. Applying this rule, Betar, the Illinois personal representative, would be considered the real party in interest.
 
 
 7
 The defendant's reliance on Mecom, however, fails to consider the decision in its proper statutory context and in light of subsequent developments in the law. The effect of the appointment of the personal representative in this case, at least on a prima facie basis, was to create diversity jurisdiction. The effect of the device in Mecom was to defeat jurisdiction. Devices to create federal jurisdiction have historically been limited by statute; devices to defeat jurisdiction have not. See Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 825-26, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969). See generally Hart & Wechsler's The Federal Courts and the Federal System at 1100-01 (2d ed. 1973); 3A Moore's Federal Practice P 17.05(2) at 17-40; C. Wright & A. Miller, Federal Practice & Procedure § 1558 (1971). Thus, the plaintiff's argument against the creation of jurisdiction in this case is aided by 28 U.S.C. § 1359, which says:
 
 
 8
 A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.
 
 
 9
 The early treatment of court-appointed wrongful death fiduciaries under section 1359 is typified by the literal reading of the statute in Corabi v. Auto Racing, Inc., 264 F.2d 784 (3d Cir. 1959). According to the Corabi rule, a device used to create jurisdiction fell within the prohibition of section 1359 only if the court found an illegal agreement or understanding between opponents. The court interpreted Mecom as making a motive to secure jurisdiction immaterial and not subject to inquiry by the court in the absence of collusion. See also McCoy v. Blakely, 217 F.2d 227 (8th Cir. 1954) (appointment of fiduciary violates statute only if it perpetrates a fraud). See generally C. Wright & A. Miller, Federal Practice & Procedure § 1557 (1971). The Third Circuit, sitting En banc, overruled Corabi in 1968, however, holding that an appointment of a representative with only nominal duties, motivated by a desire to create federal jurisdiction, violated section 1359. McSparren v. Weist, 402 F.2d 867 (3d Cir. 1968), Cert. denied, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217.
 
 
 10
 The decision of the Supreme Court in Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969), decided shortly after McSparren, buttresses the ruling in that case. In Kramer the Supreme Court ruled that an assignment of a claim for the sole purpose of creating diversity jurisdiction, although legal under state law, was insufficient under section 1359 to create diversity jurisdiction. According to the Court in Kramer, section 1359 must be read consistently with its broad purpose:
 
 
 11
 If federal jurisdiction could be created by assignments of this kind, which are easy to arrange and involve few disadvantages for the assignor, then a vast quantity of ordinary contract and tort litigation could be channeled into the federal courts at the will of one of the parties.
 
 
 12
 394 U.S. at 828-29, 89 S.Ct. at 1490.[1] The Court in Kramer expressly reserved decision, however, as to the effect of section 1359 on the appointment of representatives. The Court noted that the appointment of representatives varied in certain respects from assignments without deciding whether the variations were significant to the jurisdictional question. Briefly summarized, the suggested differences were: 1) state wrongful death laws typically require that a representative bring the suit; 2) the powers of representatives vary from state to state; and 3) the appointment of a representative is the result of a state court decree, not merely a private agreement.
 
 
 13
 Since the decision in Kramer, however, the Courts of Appeals have accorded little weight to these suggested distinctions and have followed the Third Circuit decision in McSparren. E. g., Bass v. Texas Power & Light Co., 432 F.2d 763 (5th Cir. 1970), Cert. denied, 401 U.S. 975, 91 S.Ct. 1194, 28 L.Ed.2d 324 (1971); Rogers v. Bates, 431 F.2d 16 (8th Cir. 1970); O'Brien v. AVCO Corp., 425 F.2d 1030 (2d Cir. 1969). These decisions have applied section 1359 to defeat diversity jurisdiction based on the appointment of representatives with only nominal duties for the purpose of creating diversity of citizenship.[2]
 
 
 14
 In Lester v. McFaddon, 415 F.2d 1101 (4th Cir. 1969), for example, the Fourth Circuit minimized the differences alluded to in Kramer between assignment of a claim and appointment of a nominal representative. In Lester the beneficiaries under the state wrongful death statute, residents of South Carolina, appointed a Georgia representative to be named plaintiff for the sole purpose of creating diversity between the plaintiff and the defendant, a South Carolina citizen like the beneficiaries. The only duties of the representative were to lend his name to the suit and to disburse the proceeds to the statutory beneficiaries in the event of recovery. The court held that the citizenship of the beneficiaries controlled the jurisdictional issue. Comparing the case before it to Kramer, the court said that procuring the services of an out-of-state administrator for the purpose of creating diversity was as voluntary as the assignment in Kramer, regardless of the requirement of state law that some representative be appointed. Furthermore, disregarding the representative's citizenship for the purpose of determining jurisdiction did not constitute an attack on the state court appointment because the representative was still able to bring the action in his name pursuant to the state court order. The court finally examined the relationship of the parties to the action, concluding that the beneficiaries held the primary stake in the litigation, not the appointed representative, who was little more than a strawman. On this basis the court reasoned that the position of the parties was indistinguishable from that of the assignor and assignee in Kramer and held that jurisdiction was lacking under section 1359. See also O'Brien v. AVCO Corporation, 425 F.2d 1030, 1033-34 (2d Cir. 1969) (disregarding suggested differences between assignments and appointments for similar reasons).
 
 
 15
 There is virtually no difference between the duties of the personal representative appointed here and the duties of those whose appointment has been held inadequate by other Courts of Appeals to invoke jurisdiction. The Illinois Wrongful Death Act gives neither the personal representative nor the decedent's estate the right to share in the proceeds of the recovery. The representative's sole duty under the Act is to distribute the proceeds to the statutory beneficiaries in the event of recovery. Of course, the personal representative has a fiduciary duty requiring a bond to insure his acting with diligence and fidelity. See Ill.Rev.Stat. ch. 70, § 2, ch. 1101/2, § 13-2; Harnetiaux' Estate v. Hartzell, 91 Ill.App.2d 222, 234 N.E.2d 81 (1968). Performance of this fiduciary duty of diligence is hardly a sufficient stake in the action to make the representative the real party in interest. We see no grounds for distinguishing between the personal representative under the Illinois Wrongful Death Act and the representative in Lester v. McFaddon, supra. See also Bishop v. Hendricks, 495 F.2d 289 (4th Cir. 1974), Cert. denied, 419 U.S. 1056, 95 S.Ct. 639, 42 L.Ed.2d 653; Miller v. Perry, 456 F.2d 63 (4th Cir. 1972); O'Brien v. AVCO Corp., 425 F.2d 1030 (2d Cir. 1969). Cf. First National Bank of Chicago v. Ettlinger, 465 F.2d 343 (7th Cir. 1972) (executor appointed in will with active duties, including gathering assets in estate, paying debts and taxes of estate, collecting debts to estate, defending will and distributing property to beneficiaries); Sadler v. New Hanover Memorial Hospital, Inc., 588 F.2d 914 (4th Cir. 1978) (executrix of active estate named in will). The statutory beneficiaries of this action are the widow and children of Raghubir Dutt Law, and they are the only parties that have an actual stake in the outcome of the litigation. Thus, in substance, this action is a suit between aliens.
 
 
 16
 It is quite clear, however, that the beneficiaries did not appoint the personal representative for the purpose of creating diversity of citizenship. Apparently Illinois offers the most convenient forum and the plaintiff was the most convenient administrator available. The motives for the appointment do not appear clearly in the record, but most conspicuous is the lack of an apparent motive to manufacture jurisdiction. Although this motivation typically has been a factor in the decisions applying section 1359, See, e. g., Bass v. Texas Power & Light Co., 432 F.2d 763 (5th Cir. 1970); O'Brien, supra; McSparren, supra, we do not consider it indispensable to a holding of improper party making or joinder under section 1359. The purpose of section 1359 is to limit consideration to cases that "really and substantially" involve a dispute within the jurisdiction of the federal courts. See Bishop, supra, 495 F.2d at 294; O'Brien, supra, 425 F.2d at 1032. Because the named plaintiff here has no stake in the outcome of the lawsuit, the use of his citizenship transforms an action between aliens to an action within the diversity jurisdiction. The purpose of diversity jurisdiction to prevent local prejudice, and the salutary purposes of section 1359 are not served by assuming jurisdiction of this action, just as they would not be served by assuming jurisdiction in the more common situation involving a motive to manufacture jurisdiction by the appointment. The reason for appointing the representative here is insufficient to establish more than a nominal relationship between the representative and the cause. Bishop, supra (remanding under § 1359 although administrator appointed for experience in business affairs); Vaughan v. Southern Ry., 542 F.2d 641 (4th Cir. 1976) (remanding under § 1359 although purpose of bringing suit in North Carolina with required resident representative was to locate litigation close to witnesses and scene of accident).
 
 
 17
 Thus it is clear that the beneficiaries could not have used the citizenship of this administrator to invoke federal diversity jurisdiction. It is equally clear that the defendants, motivated by a desire to invoke diversity jurisdiction, cannot base removal on the citizenship of the representative. In the absence of a specific statutory exception, removal is proper only if the federal court would have had jurisdiction over the action as it was originally filed by the plaintiff. 28 U.S.C. § 1441(a); In re Dunn, 212 U.S. 374, 384, 29 S.Ct. 299, 53 L.Ed. 558 (1909); Snow v. Ford Motor Co., 561 F.2d 787, 789 (9th Cir. 1977). See Mullins v. Seals, 562 F.2d 326 (4th Cir. 1977) (remanding wrongful death action to state court after removal by defendant based on diversity between personal representative and defendant).
 
 
 18
 Accordingly, the judgment of the district court is reversed and the cause is remanded to the district court with directions to remand the cause to the state court.
 
 
 
 *
 Senior District Judge Walter E. Hoffman of the Eastern District of Virginia is sitting by designation
 
 
 [1]
 Although the defendant apparently has not made this argument, we do note that the type of diversity jurisdiction was not a factor in the Kramer decision. The diversity involved in Kramer was the same as the diversity involved here, based on the alienage of one of the parties. 28 U.S.C. § 1332(a)(2). The Court said:
 (B)y its terms, § 1359 applied equally to both types of diversity jurisdiction and there is no indication Congress intended to treat them differently.
 394 U.S. at 829-30, 89 S.Ct. at 1491.
 
 
 [2]
 At least one decision applying Kramer has gone as far as to reject the Mecom rule when the effect of the citizenship of the representative is to Defeat jurisdiction. Miller v. Perry, 456 F.2d 63 (4th Cir. 1972). In Miller the state wrongful death statute required appointment of a resident administrator as plaintiff. If the Mecom rule were read as a universal requirement, the effect of this state residency requirement would be to deny nonresidents a federal wrongful death forum against resident tortfeasors. The Fourth Circuit declined to hold the state residency requirement an unconstitutional state limitation of federal jurisdiction, reasoning instead that the Mecom rule was based on the assumption that the personal representative was clothed with such responsibilities and authority that he was the real party in interest in the action. Because the Kramer decision "injected a new note of realism into the determination of diversity jurisdiction . . . ," the Fourth Circuit declined to use the citizenship of a nominal representative to defeat federal jurisdiction. The citizenship of the statutory beneficiaries was held to control
 Miller indicates that a state residency requirement is material when the effect of the requirement is improperly to defeat federal jurisdiction. The attempt by the defendant to distinguish the present case because Illinois law has no such residency requirement is not persuasive, because at issue is a device to manufacture, not defeat, jurisdiction. Indeed, the potential for manipulation of diversity is greater when the choice of representative is unlimited. Mecom was applicable to the situation in Miller, and the issue was the extent to which the Mecom rule survived Kramer. The plaintiff here argues, however, and we agree, that Mecom is not even applicable.