Carol **PALLAZOLA**, Administratrix of the Estate of Betty Ann Michaud, Plaintiff,

v.

Carolyn **RUCKER**, Michael Schwartz, Eugene Smith, Charles Peters, Guenther Herpfer, June Pickering Nurses Registry, and Lynn Hospital, Defendants.

Civ. A. No. 80–2605–K.

United States District Court, D. Massachusetts.

Aug. 1, 1985.

As modified Nov. 8, 1985.

Ann Marie Maguire, Andrew C. Meyer, Jr., Lubin & Meyer, Boston, Mass., for plaintiff.

Raymond Kenney, Jr., Clement McCarthy, and Daniel Griffin, Boston, Mass., for Eugene Smith, M.D.

Barbara Buell, Somerville, Mass., for Michael Schwartz.

Richard L. Fox and John Britt, Carragher, Fox & Lampert, Chelmsford, Mass., for Carolyn Rucker.

John Kane, Ropes & Gray, Boston, Mass., for June Pickering Nurses Registry.

Edward McCarthy, McCarthy & Keane, Cambridge, Mass., for Guenther Herpfer, M.D. and Lynn Hosp.

Craig M. Brown, Melick & Porter, Boston, Mass., for Charles Peters, M.D.

Wilson D. Rogers, Jr., Dunn & Rogers, P.C., Boston, Mass., for Lynn Hosp.

## OPINION

KEETON, District Judge.

■ In November 1980, the plaintiff, Carol Pallazola, administratrix of the estate of Betty Ann Michaud, filed this malpractice action on behalf of that estate against Carolyn Rucker and June Pickering Nurses Registry. After repeated deferrals of court action at the joint request of counsel, plaintiff filed an amended complaint in 1983 naming several additional defendants. Since that time some limited discovery has occurred and the parties have engaged in extensive proceedings concerning the role of the state malpractice tribunal and the posting of bonds by the plaintiff. *See Pallazola v. Rucker*, 602 F.Supp. 459 (D.Mass. 1984). Now, some four and one-half years after the initiation of this action in federal court and after the state statute of limitations for refiling this action in state court, unless tolled, has long ago run (indeed, having done so even before the filing of the amended complaint), some of the defendants challenge the diversity of citizenship on which the jurisdiction of this court is based. This court having previously entered an interlocutory order, on February 20, 1985, dismissing the action as to defendants Peters, Schwartz, and June Pickering Nurses Registry, these defendants have not participated in this challenge to jurisdiction. One defendant (Rucker), had included in her answer a challenge to jurisdiction, but without specifying why she contended that no diversity of jurisdiction existed. The defendants who now participate in this challenge claim that diversity was "manufactured" for the purpose of this action by the appointment of plaintiff Pallazola as administratrix, and that federal jurisdiction is thus barred under 28 U.S.C. § 1359 (1982). Of course, this court cannot act without jurisdiction and must be open to jurisdictional challenge at any and every point during the proceedings. Therefore, despite any hardship that may result from this holding, either to plaintiff or to any of the defendants (either those who have participated in this challenge or those who have not done so), I am constrained, based on the evidence presented to me at the hearing on June 5, 1985, to conclude that diversity was "improperly" created within the meaning of § 1359, and federal jurisdiction does not exist in this case.

### I.

Under 28 U.S.C. § 1332(a) (1982), "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between ... citizens of different states." Because the plaintiff Pallazola is a citizen of California and the defendants are citizens of Massachusetts and various other states not including California, diversity jurisdiction would appear to exist. The defendants, however, contend that the plaintiff was appointed administratrix for the purpose of creating diversity and that such "manufactured" diversity is barred by 28 U.S.C. § 1359 (1982). That statute prevents a district court from assuming jurisdiction of an action "in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." *Id.*

Early judicial interpretations of § 1359 permitted jurisdiction even where an administrator admittedly had been chosen solely for the purpose of creating jurisdiction. *See Corabi v. Auto Racing, Inc.*, 264 F.2d 784 (3d Cir.1959) (holding that the appointment of an administrator in order to create diversity was not "improper" or "collusive"); *Lang v. Elm City Construction Company*, 324 F.2d 235 (2d Cir.1963) (following *Corabi*); *Todd County v. Loegering*, 297 F.2d 470 (8th Cir.1961) (following *Corabi* with respect to trustees).

In 1968, however, the Court of Appeals for the Third Circuit overruled its *Corabi* decision in *McSparran v. Weist*, 402 F.2d 867 (3d Cir.1968). In *McSparran* the Court concluded that § 1359 barred jurisdiction where a nominal party, whether a guardian, administrator or executor, "who

has no real or substantial interest in the dispute or controversy" is designated "simply for the purpose of creating diversity of citizenship jurisdiction." 402 F.2d at 873.

Shortly after *McSparran* was decided, the Supreme Court held that an assignment made for the purpose of creating diversity jurisdiction is improper and collusive. *See Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969). The Court concluded that such " 'manufacture of Federal jurisdiction' " falls within the "very core" of the prohibition of § 1359. 394 U.S. at 829–30, 89 S.Ct. at 1490–91. The Court reserved decision on the issue as to whether manufacture of diversity jurisdiction was barred for administrators and guardians as well as for assignees. 394 U.S. at 828 n. 9, 89 S.Ct. at 1490 n. 9. It noted that court-appointed representatives such as administrators differ from assignees in some respects because they hold their position pursuant to a decree of a state court rather than merely to the action of the parties. But the Court declined to decide whether "these distinctions amount to a difference for purposes of § 1359." *Id.*

Although the First Circuit has not specifically addressed the question, the various Courts of Appeals have held "with one voice," C. Wright, *Law of Federal Courts* § 31, at 168 (4th ed. 1983), that in the context of the appointment of an administrator these distinctions are not sufficient to warrant departure from the *Kramer* rule. These courts have held that jurisdiction is barred by § 1359 as improper or collusive where an administrator has been chosen for the purpose of creating diversity jurisdiction. *See Bass v. Texas Power and Light Company*, 432 F.2d 763 (5th Cir.1970), *cert. denied*, 401 U.S. 975, 91 S.Ct. 1194, 28 L.Ed.2d 324 (1971); *O'Brien v. AVCO Corp.*, 425 F.2d 1030 (2d Cir. 1969); *Lester v. McFaddon*, 415 F.2d 1101 (4th Cir.1969).

■■■■ In light of the weight of this authority and the underlying purpose of § 1359, to protect diversity jurisdiction against misuse by parties where there is no danger of discrimination against an out-of-state party in state court, I conclude that the *McSparran* interpretation is the proper one to be applied in this case. The question therefore is whether plaintiff Pallazola was appointed for the purpose of creating diversity jurisdiction in the malpractice action. This question is factual, *McSparran*, 402 F.2d at 876.

■■■■ Plaintiff, as the party invoking federal diversity jurisdiction, has the burden of proving diversity of citizenship. *Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942); *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 702 (1st Cir.1979); *McSparran*, 402 F.2d at 875–6. Because statutes conferring federal jurisdiction are to be strictly construed, the plaintiff retains the burden at all times to support the allegations of jurisdictional facts. That the jurisdictional challenge is based on defendants' allegation that the plaintiff "manufactured" diversity does not shift that burden from the plaintiff. Whether or not this usual rule applies in the present case, however, I conclude that there is no federal jurisdiction, because my findings, stated below, are made on a preponderance of the evidence and not on the basis that the burden of proof is decisive.

The decedent Betty Ann Michaud died on December 31, 1977, following surgery and while under the medical care of defendants. She was survived by her mother, her sister Dorothy Waselchuk, and her son and sole heir, Donald Michaud. Ms. Michaud had been a resident of Massachusetts as were her mother, sister, and son at the time this action was filed. Plaintiff Carol Pallazola, a citizen of California at the time this action was filed, was appointed administratrix on October 28, 1980, and the malpractice action was filed in this court in November 1980.

Dorothy Waselchuk, the sister of the decedent, has in many respects been the principal actor in handling the malpractice action and other aspects of the estate of her sister thus far. She headed the household and handled the finances of her sister, her

sister's son and their mother before the death of Betty Ann Michaud, and she has continued to do so since that time. Ms. Waselchuk, an airline stewardess, supported and continues to support the family, paying the rent, health insurance, and other household expenses. With respect to the estate of the decedent, Ms. Waselchuk discovered and paid all debts, including the costs of the funeral, disposed of what assets there were and made the claim on a small life insurance policy held by Ms. Michaud. Having decided to pursue the possibility of a malpractice action, Ms. Waselchuk approached the law firm, Lubin and Meyer, that is now representing the plaintiff in this action. Ms. Waselchuk engaged that firm to handle the malpractice claim in 1980. Later that same year she asked plaintiff Pallazola to become the administratrix. Since the filing of this action in November 1980, Ms. Waselchuk has been in continuous contact with Lubin and Meyer and has assisted in answering interrogatories.

There is evidence that, during the three years between her sister's death and the appointment of Ms. Pallazola, Ms. Waselchuk suffered physical and emotional trauma from a variety of causes. She suffered from continuing back pain that prevented her from working for a number of months. Her mother experienced serious heart trouble; her father died during this period and, of course, she had lost her sister. The distress that these events caused Ms. Waselchuk is more than understandable. Nonetheless, her performance of every task required to handle the estate of Betty Ann Michaud before the appointment of the plaintiff in 1980, including the engagement of counsel for the present action, renders unpersuasive her claim that she chose the plaintiff because she felt incapable herself of serving as administratrix for purposes of this action (a role that Ms. Pallazola has demonstrated is rather nominal).

Donald Michaud was seventeen years of age at the time of his mother's death, and twenty in 1980 when the administratrix was appointed. He suffered considerable emotional distress after his mother's death. I need not decide whether, as plaintiff claims, his distress was of such magnitude as to incapacitate him from acting as administrator. There is ample evidence in the record to convince me that whether or not Donald Michaud was a viable candidate for the position, Ms. Pallazola was chosen for her out-of-state citizenship.

Carol Pallazola was a long-time friend of Ms. Waselchuk and a sister stewardess. She had never met the decedent and has met the decedent's sole heir, Donald Michaud, only once or twice. She has never discussed this action or his mother's estate with Mr. Michaud. In ascertaining whether there were any debts or assets of the estate, Ms. Pallazola relied solely on the verbal assurances of Ms. Waselchuk. When Ms. Pallazola agreed to become the administratrix she understood that her only act as administratrix would be to administer the malpractice action. Her involvement in this litigation has consisted primarily of periodic phone consultations with the office of Lubin and Meyer. She took no part in engaging the firm; she never visited its office nor met any of its lawyers until the day of the evidentiary hearing on jurisdiction. She has kept no written records pertaining to the estate or to this litigation, and she has no authority to settle the malpractice claim without the consent of the beneficiary Donald Michaud.

■ In light of these facts I find that the choice of Carol Pallazola as administratrix was made for the purpose of creating diversity. Thus, under 28 U.S.C. § 1359, federal jurisdiction is barred.

■ Plaintiff urges that I give only prospective effect to my ruling that diversity jurisdiction is barred by § 1359 where the administrator is appointed for the purpose of creating jurisdiction. In support of her position plaintiff points to *Lester v. McFaddon*, 415 F.2d at 1106–8, in which prospective effect was given to an identical holding. That case is inapposite, however, because it was decided immediately after the *McSparran* decision overruling *Corabi*.

The Court considered the inequity of applying the *McSparran* rule to parties who had commenced their action before that holding and had relied on the long-established *Corabi* interpretation. Here no such inequity is present. The *McSparran* rule and the various opinions of the Courts of Appeals approving *McSparran* and extending the *Kramer* rule of the Supreme Court to administrators have been reported for well over a decade. The holding as to § 1359 should thus come as no surprise to the plaintiff, and I conclude that a prospective ruling is not warranted.

## II.

■ There has been some suggestion by the plaintiff that, should I find no diversity on the basis of her citizenship, I should look to the citizenship of the sole beneficiary Donald Michaud, that I should find him to have been a citizen of New York, and that I should therefore conclude that there is diversity. Some courts, having discounted the "manufactured" diverse citizenship of the nominal plaintiff, have indeed attributed the citizenship of the beneficiary to the plaintiff for the purpose of that action, *see, e.g., Vaughan v. Southern Ry. Co.,* 542 F.2d 641, 643–4 (4th Cir.1976), though ordinarily for the purpose of defeating rather than finding diversity. I *need not decide whether similar attribution would be appropriate in a case such as this in order to create diversity* because it is clear from the evidence adduced at the hearing that Donald Michaud was a citizen of Massachusetts and not of New York in November 1980, the time of the filing of this action. Although it is undisputed that Mr. Michaud was a student at a college in New York during the academic year 1980–1981, it is also undisputed that he lived in a school dormitory, returned home to Massachusetts for school vacations, registered his car in Massachusetts, and registered to vote in Massachusetts. Although the citizenship of college students is often problematic, I find, based on the above evidence, that Donald Michaud was a citizen of Massachusetts at the time this action was filed. Thus, even were I to conclude that Mr. Michaud's citizenship was relevant to the jurisdictional question, I would have to conclude there was no diversity jurisdiction.

## III.

Having concluded that there is no federal subject matter jurisdiction, I turn now to the disposition of this case. This action was filed over four and one-half years ago in this federal district court. The jurisdictional issue was not raised by any defendant before defendant Rucker's answer in 1983, and not specifically on the grounds of "manufactured" diversity until May 1985, well after the statute of limitations on any potential action in state court had run, if not tolled. I am thus faced with the distressing and inequitable possibility that, should I dismiss this case, it may never be heard on its merits in any court, unless the state court accepts it or on other grounds holds that an action newly filed in state court is not barred by the statute of limitations. Because of the potentially drastic results of federal dismissal, several alternative possibilities for disposition have been raised.

■ First, the suggestion that I "remand" the case to the state court pursuant to 28 U.S.C. § 1447(c) (1982) must fail. Such remand is authorized only where the action was originally filed in state court and then "improvidently" removed to federal court. Here, this action was not filed in state court; it originated in federal court.

■ Second, 28 U.S.C. § 1631 (1982) likewise provides no alternative disposition. According to that section, a district court finding itself without jurisdiction may transfer a case. The section applies, however, only to transfers within the federal court system and not to a transfer from federal to state court. *McLaughlin v. ARCO Polymers, Inc.,* 721 F.2d 426 (3d Cir.1983); *see* 28 U.S.C. § 610 (1982) (defining "court" to which an action may be transferred pursuant to § 1631 as a court of appeals or district court of the United States or one of the various other federal

courts such as the United States Claims Court).

 The final suggestion, advanced by plaintiff, that I refer this case to state court, warrants more serious consideration. A court always has jurisdiction to determine whether it has jurisdiction over a case. Inherent in the former jurisdiction is the power to order an appropriate disposition of the case after the latter jurisdiction is found wanting. Disposition may be to dismiss or, in an appropriate case, to transfer the case—for example, pursuant to a federal statute such as § 1631. I conclude that referral to a state court willing to accept the case as a matter of state law is another available alternative. *Cf. Weaver v. Marine Bank,* 683 F.2d 744 (3d Cir.1982) (ordering a district court, as to a case based on a state law claim, originally brought pendent to a federal claim, to transfer the case to a state court pursuant to a state statute that specifically approved such a transfer).

In Massachusetts there is no statute, to my knowledge, that expressly provides for acceptance by the state court of cases from a federal court. There is, however, a "saving statute" that provides for the refiling of actions dismissed for various reasons after the statute of limitations has run. Mass.Gen.Laws Ann. ch. 260, § 32 (West 1984). Whether a state court can and will accept this case—relying on the saving statute, or on the powers inherent in its general jurisdiction, or on some other basis in state law—is a question of state law. I conclude that it is inappropriate for a federal court, in the circumstances of this case, even to purport to decide that question. It is appropriate, however, and indeed necessary, that I take account of the various ways that issue might be decided and avoid entering a form of order that might in any way be thought to restrain or limit the freedom of the state court to accept the case, if it should choose to do so. State law may, for example, authorize the state court to take account of the fact that the case has actually been before it already on referral by this court for state malpractice

tribunal proceedings. Rather than addressing such an issue of state law, I ruled on August 1, 1985, that as a matter of comity I should postpone the entry of a final disposition in this case for a reasonable period of time to allow the plaintiff an opportunity to obtain a ruling from a state court as to its willingness to accept the case either by transfer of the case now pending in this court or by the filing of a new complaint.

Because of the late stage at which the jurisdictional challenge was raised in this case, it may be argued that the difference between referral to the state court and dismissal would be significant. First, if the case is dismissed, the plaintiff may be barred from filing a new action in state court because the statute of limitations has run. Second, even if a new case were to be allowed under the saving statute or some other provision, years of litigation effort, including the extensive proceedings before the state malpractice tribunal, might be lost. Thus, it is particularly important that the state be given an opportunity to decide whether, as a matter of state law, it can and will accept the case from this court.

The defendants contend that this court may take no action other than dismissal because of lack of inherent power to transfer. The First Circuit has indeed held that where there is a lack of subject matter jurisdiction there is no inherent power to transfer. *See Dantes v. Western Foundation Corporation Association,* 614 F.2d 299, 301 (1st Cir.1980). That holding is not controlling as to the issue at hand, however. An inherent power to transfer, as examined in the context of that case, implied authority not only to remove the case from the court's own docket, but also to place it on another court's docket—thus requiring the other court to take judicial action to dispose of the case, even if not on the merits. It was a claim of that power that the First Circuit rejected. Here the proposal is not that this court *order* the state court to accept transfer of the case, but only that this court *offer* to refer the case if a state court is willing to accept it.

I conclude that if, as a matter of state law, a state court is willing to accept a case, a federal court may refer it in the exercise of the federal court's authority to make an appropriate disposition of a case after a want of jurisdiction has been noted.

A second objection to such a disposition is suggested by the dissent in *Weaver, see* 683 F.2d at 751–2 (Sloviter, J., dissenting), which reasoned that federal referral pursuant to state law was constitutionally prohibited. It characterized such referral as relying on an unconstitutional state creation of federal court authority. Even if the First Circuit were to adopt this argument, however, I conclude that it would apply only to purported state assertions that a federal court *must* act. The dissenting opinion in *Weaver* did not address the constitutionally significant distinction between a purported state mandate of federal court action and a state declaration of receptivity to action initiated by the federal court. Here, even if the state would be willing to accept the case, it in no way would be forcing this court to refer it. The state court would not be requiring this court to take any action, nor could it do so consistently with the mandate of Article III that only Congress can grant authority to the federal courts. The state court would merely be expressing its receptiveness to taking the case should the federal court choose, on the basis of its own power to dispose of cases over which it has no jurisdiction, to refer it.

The functioning of the medical malpractice tribunal system, both in this case and in malpractice cases more generally, has illustrated both the propriety and the utility of acts of comity between state and federal courts. Under that system neither court purports to order actions by the other but each invites and gives effect to the other's actions pursuant to the state malpractice tribunal statute, to state decisions construing it, and to federal law, both statutory and decisional, bearing upon diversity cases. *See generally Feinstein v. Massachusetts Gen. Hosp.*, 643 F.2d 880 (1st Cir.1981) (holding that the *Erie* doctrine requires federal district court sitting in a diversity action to refer malpractice cases arising under the Massachusetts statute to the malpractice tribunal, the state having manifested its willingness to accept such referrals); *Clarke v. Heisey*, 16 Mass.App. 976, 452 N.E.2d 1174 (1983) (holding that determination of applicability of malpractice tribunal statute to case pending before federal court was to be made by the federal court, not the state court).

## IV.

On October 8, 1985, the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts entered an Order allowing plaintiff's motion for acceptance of the case. After considering further submissions of the parties, oral and written, received after entry of the Order of October 8, 1985, I conclude that judgment shall be entered in the form attached as an appendix to this Opinion.

### APPENDIX

#### Judgment

#### November 8, 1985

For the reasons stated in the Opinion of August 1, 1985, as modified this date, it is ORDERED:

The Clerk shall forthwith forward a certified copy of the docket entries and all pleadings in this action to the Clerk of the Essex Division of the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts for acceptance pursuant to the Order of that court of October 8, 1985.

Such certified copy having been forwarded and accepted, this action is dismissed for want of subject matter jurisdiction of this court to take further action in this case.