Carol PALLAZOLA, Administratrix of
the Estate of Betty Ann Michaud,
Plaintiff, Appellee,

v.

Carolyn RUCKER, R.N., et al.,
Defendants, Appellees.

Appeal of Eugene SMITH, M.D.

Carol PALLAZOLA, Administratrix of
the Estate of Betty Ann Michaud,
Plaintiff, Appellee,

v.

Carolyn RUCKER, R.N.,
Defendant, Appellant.

Carol PALLAZOLA, Administratrix of
the Estate of Betty Ann Michaud,
Plaintiff, Appellee,

v.

Carolyn RUCKER, R.N., et al.,
Defendants, Appellees.

Appeal of June PICKERING.

Carol PALLAZOLA, Administratrix of
the Estate of Betty Ann Michaud,
Plaintiff, Appellee,

v.

Carolyn RUCKER, R.N., et al.,
Defendants, Appellees.

Appeal of Michael
SCHWARTZ, M.D.

Carol PALLAZOLA, Administratrix of
the Estate of Betty Ann Michaud,
Plaintiff, Appellee,

v.

Carolyn RUCKER, R.N., et al.,
Defendants, Appellees.

Appeal of Guenther
HERPFER, M.D.

Carol PALLAZOLA, Administratrix of
the Estate of Betty Ann Michaud,
Plaintiff, Appellee,

v.

Carolyn RUCKER, R.N., et al.,
Defendants, Appellees.

Appeal of LYNN HOSPITAL.

Carol PALLAZOLA, Administratrix of
the Estate of Betty Ann Michaud,
Plaintiff, Appellee,

v.

Carolyn RUCKER, R.N., et al.,
Defendants, Appellees.

Appeal of Charles PETERS, M.D.

Carol PALLAZOLA, Administratrix of
the Estate of Betty Ann Michaud,
Plaintiff, Appellant,

v.

Carolyn RUCKER, R.N., et al.,
Defendants, Appellees.

Nos. 85–1888, 85–1893, 85–1935, 85–1936,
85–1937, 85–1938, 85–1973 and 85–1974.

United States Court of Appeals,
First Circuit.

Aug. 1, 1986.

Ann Marie Maguire with whom Andrew C. Meyer, Jr. and Lubin & Meyer, P.C., Boston, Mass., were on brief, for Carol Pallazola.

Joan Eldridge, Cambridge, Mass., and Steven R. Kruczynski, Boston, Mass., with whom Edward D. McCarthy, McCarthy, Foster & Eldridge, Cambridge, Mass., John E. Bowman, Jr., Raymond J. Kenney, Jr. and Martin, Magnuson, McCarthy & Kenney, Boston, Mass., were on briefs, for Eugene Smith, M.D., Guenther Herpfer, M.D., Carolyn Rucker, R.N. and Lynn Hospital.

Craig M. Brown with whom Robert P. Powers, Melick & Porter, Boston, Mass., Marc J. Gervais, Barbara Hayes Buell, Bloom & Buell, Somerville, Mass., John C. Kane, Jr., John C. Bartenstein and Ropes & Gray, Boston, Mass., were on briefs, for Charles Peters, M.D., Michael Schwartz, M.D. and June Pickering.

Before COFFIN and TORRUELLA, Circuit Judges, and MALETZ,* Senior Judge.

MALETZ, Senior Judge.

The appeal and cross-appeals before us raise two major questions: (1) Did the district court err when it found that the plaintiff below was chosen as administratrix of a decedent's estate for the purpose of creating diversity jurisdiction? (2) Having made that finding, did the district court err when it referred the action to a state court rather than immediately entering a judgment of dismissal? We hold that the district court was correct in finding that diversity jurisdiction had been manufactured improperly or collusively. We do not reach the propriety of the referral to the state court, because the question is moot. Accordingly, the judgment of the district court is affirmed, and the cross-appeals challenging the referral are dismissed.

## I. *Background*[1]

Betty Ann Michaud (Mrs. Michaud) died intestate on December 31, 1977 at age 39, leaving only one heir, her 17–year-old son, Donald Michaud (Donald). At the time, Mrs. Michaud was unmarried; her father

---

* Of the United States Court of International Trade, sitting by designation.

**1.** Comprehensive discussions of the facts appear in the district court's reported opinions. *Pallazola v. Rucker*, 621 F.Supp. 764 (D.Mass.1985);

602 F.Supp. 459 (D.Mass.1984). We discuss the facts to the extent necessary for an understanding of the issues on the appeal and cross-appeals.

was deceased and her mother was in poor health. Her sister, Dorothy Waselchuk, had been out of work as an airline stewardess for approximately one year, because of a back problem. At the time of her death, Mrs. Michaud, her mother, her sister, and her son were all citizens of Massachusetts.[2]

On October 28, 1980, Carol Pallazola, a stewardess friend of Waselchuk who resided in California, was appointed administratrix of Mrs. Michaud's estate. Relying on diversity jurisdiction, 28 U.S.C. § 1332(a) (1982),[3] Pallazola in November 1980 commenced a medical malpractice and wrongful death action against a nurse, Carolyn Rucker, and the June Pickering Nurses Registry, with other defendants added in an amended complaint.

At a pretrial conference held on April 1, 1985, Pallazola's attorney advised the district court that the Massachusetts probate court had substituted Donald for Pallazola as administrator of Mrs. Michaud's estate. Counsel for defendant Dr. Guenther Herpfer raised the question of diversity jurisdiction, because Donald resided in Massachusetts. He added his belief that Pallazola "was not really an interested party in the case but an administratrix, for whatever purposes" and indicated that he had "started to do some digging on that issue" but never "finalized that." He concluded that he had "a question at least in my own head where that leaves us now with the parties on both sides of the case really all being Massachusetts domiciliaries." When counsel for plaintiff responded that the test of jurisdiction is whether diversity existed when the suit is filed, the court observed that, nevertheless, if the administratrix had been appointed "for the purpose of conferring jurisdiction, that raises problems."

The court was referring to 28 U.S.C. § 1359 (1982), which provides:

A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

To determine whether jurisdiction was improperly manufactured, the district court held a hearing at which Pallazola, Waselchuk, and Donald testified. After summarizing the evidence adduced at the hearing, the district court concluded:

In light of these facts I find that the choice of Carol Pallazola as administratrix was made for the purpose of creating diversity. Thus, under 28 U.S.C. § 1359, federal jurisdiction is barred.

621 F.Supp. at 768. The court rejected Pallazola's suggestion that this interpretation of section 1359 should be given only prospective effect, id. at 768–69, and added its finding that Donald, the estate's sole beneficiary, was also a citizen of Massachusetts, id. at 769.

The district court was troubled, however, that defendants had not raised the jurisdictional issue until the Massachusetts statute of limitations had run: "I am thus faced with the distressing and inequitable possibility that, should I dismiss this case, it may never be heard on its merits in any court, unless the state court accepts it or on other grounds holds that an action newly filed in state court is not barred by the statute of limitations." Id. The court postponed entry of judgment to permit "plaintiff an opportunity to obtain a ruling from a state court as to its willingness to accept the case either by transfer of the case now pending in this court or by the filing of a new complaint." Id. at 770. After the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts indicated it would accept the case, the district court entered a judgment (1) directing the federal clerk to for-

---

2. Donald's citizenship was the subject of some dispute, but the district court found him a citizen of Massachusetts. 621 F.Supp. at 769. For reasons we shall discuss, that finding was not erroneous.

3. Section 1332(a) provides in part:

The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

(1) citizens of different States....

ward copies of the docket entries and pleadings to the state court and (2) dismissing the federal action for want of subject matter jurisdiction. *Id.* at 771.

Pallazola appeals dismissal of the federal action, arguing that the defendants failed to prove there was collusion in her selection as administratrix; that she was appointed only because she was the most suitable candidate to handle the affairs of the estate; and that the district court's finding of collusion was clearly erroneous. In the alternative, Pallazola contends that this court, if it adopts the district court's interpretation of section 1359, should limit application of the rule to prospective effect.

The defendants cross-appeal on the ground that it was improper for the district court to refer the action to the state court. They maintain that, in the absence of subject matter jurisdiction, the court had no alternative to immediate entry of a judgment dismissing the action. Additionally, defendants June Pickering Nurses Registry and Drs. Michael Schwartz and Charles Peters claim that their exoneration by a medical malpractice tribunal, coupled with plaintiff's failure to post requisite bonds, entitled them to entry of judgment on the merits before the diversity question was ever reached.[4]

## II. *Manufactured Diversity Jurisdiction*

### A. *First Principles*

Relying on 28 U.S.C. § 1359 (1982), the district court held that jurisdiction was barred because Pallazola was chosen as administratrix for the purpose of creating diversity of citizenship. Although section 1359 does not make it clear that manufactured diversity is inappropriate—indeed, the statute once was read to permit the practice[5]—courts now understand section 1359 as barring manufactured diversity, at least in certain circumstances.[6] We shall first explain the origins of this conclusion, which we now join, before describing the various tests that have been used and proposed for applying section 1359 in the context of wrongful death actions.

### B. *Supreme Court Precedent*

The two leading Supreme Court cases do not provide definitive guidance on the problem we face. In *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931), a widow from Oklahoma brought three wrongful death actions against a Louisiana defendant and others in Oklahoma state court. Each time she sued, the Louisiana defendant removed the action to federal court on the basis of diversity of citizenship. *Id.* at 184–85, 52 S.Ct. at 85. The widow dismissed the removed actions and resigned as administratrix in favor of Mecom, who, like the removing defendant, was a citizen of Louisiana. *Id.* When he sued in state court, the defendant once again filed a petition to remove the action to federal court. Mecom moved to remand the action to state court, but the

---

**4.** Massachusetts law entitles medical malpractice defendants to require plaintiffs to put their claims to a tribunal before proceeding in court. Mass. Gen. Laws Ann. ch. 231, § 60B (West Supp.1984). This court has applied the statute to actions in the federal district court. *Feinstein v. Massachusetts General Hospital*, 643 F.2d 880 (1st Cir.1981). In this case, the tribunal permitted Pallazola to proceed against all defendants except Pickering, Schwartz, and Peters, as to whom plaintiff could not proceed unless she posted bonds of $2,000 per defendant. Pallazola did not post the bonds, and on February 20, 1985 the district court ordered dismissal as to Pickering, Schwartz, and Peters. 602 F.Supp. 459, 464. In a hearing held on October 9, 1985, the day after the state court indicated it would accept referral of the federal action, the district court refused to enter separate judgments in favor of these three defendants, holding that it lacked subject matter jurisdiction.

**5.** *See Lang v. Elm City Construction Co.*, 324 F.2d 235 (2d Cir.1963) (per curiam); *Corabi v. Auto Racing, Inc.*, 264 F.2d 784 (3d Cir.1959) (en banc).

**6.** *See, e.g., O'Brien v. AVCO Corp.*, 425 F.2d 1030 (2d Cir.1969) (overruling *Lang*); *McSparran v. Weist*, 402 F.2d 867 (3d Cir.1968) (en banc) (overruling *Corabi*), *cert. denied,* 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969). A contemporary commentator stated that *McSparran* "signals an abrupt and surprising reversal of policy by the Third Circuit." Note, *Manufactured Federal Diversity Jurisdiction and Section 1359*, 69 Colum.L.Rev. 706, 719 (1969).

federal district court denied the motion because it was demonstrated that the motive for Mecom's appointment was the elimination of diversity. *Id.* at 185, 52 S.Ct. at 85. In reversing, the Supreme Court held immaterial the motive behind Mecom's appointment as administrator; inasmuch as Mecom was lawfully appointed and his citizenship was the same as one of the defendants, there was no right of removal. *Id.* at 190, 52 S.Ct. at 87.[7]

*Mecom,* then, seems to stand for the proposition that the motive animating appointment of an administrator is irrelevant to the issue of diversity jurisdiction. For several reasons mentioned in a comprehensive recent law review article, the case has not been so understood. First, the new administrator was appointed with the apparent intent of *defeating,* rather than creating, diversity jurisdiction. Mullenix, *Creative Manipulation of Federal Jurisdiction: Is There Diversity After Death?,* 70 Cornell L.Rev. 1011, 1020 (1985) [hereinafter cited as Mullenix]; *accord McSparran v. Weist,* 402 F.2d 867, 875 (3d Cir. 1968) (en banc) (distinguishing *Mecom* on this basis; adding: "Section 1359, as its language clearly shows, expresses a policy against the creation of federal jurisdiction and not against its avoidance."), *cert. denied,* 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969). Second, *Mecom* dealt with removal jurisdiction rather than original jurisdiction. Mullenix, 70 Cornell L.Rev. at 1020.[8] Third, *Mecom* designated the administrator as the real party in interest, which might not always be the case, depending on the duties of an estate representative under the laws of a particular state or the circumstances of a particular estate. *Id.* at 1021.[9]

The second relevant Supreme Court case is *Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969). Although *Kramer* is the Supreme Court's only interpretation of section 1359 since it was revised in 1948, it deals with assignment of a contract claim to a nominal plaintiff rather than with appointment of an estate representative or fiduciary. The Court held that the assignment was improper or collusive within the meaning of section 1359, *id.* at 828, 89 S.Ct. at 1490, because it was obvious from the circumstances that the assignment was designed to create diversity jurisdiction, *id.* at 827, 89 S.Ct. at 1489,[10] and because such assignments could not be permitted to federalize ordinary contract and tort suits, *id.* at 828–29, 89 S.Ct at 1490.[11]

In a significant footnote, the *Kramer* Court declined to decide whether a motive to create diversity jurisdiction would ren-

7. The Court held that "it is immaterial that the motive for obtaining his appointment and qualification was that he might thus be clothed with a right to institute an action which could not be ... removed on the ground of diversity of citizenship." 284 U.S. at 190, 52 S.Ct. at 87.

8. This distinction might not be particularly important. *See Betar v. De Havilland Aircraft of Canada, Ltd.,* 603 F.2d 30, 36 (7th Cir.1979) (removal proper only if federal court would have had jurisdiction over action as originally filed by plaintiff), *cert. denied,* 444 U.S. 1098, 100 S.Ct. 1064, 62 L.Ed.2d 785 (1980).

9. Professor Mullenix concludes:

The *Mecom* decision innocently engendered more than fifty years of judicial confusion concerning whether a litigant's motives are relevant to a court's jurisdictional inquiry. After years of consistent application, most courts have now rejected the *Mecom* rule that motive is irrelevant to jurisdictional analysis, but unfortunately this repudiation has result-

ed in a split among the circuits concerning the principles applicable in jurisdictional disputes. Although some courts believe that *Mecom* is still a vital precedent, numerous decisions have significantly eroded its continuing authority. *Mecom* remains a problematic precedent that offers unclear guidance for jurisdictional analysis.

70 Cornell L.Rev. at 1021–22.

10. The Court observed that the cause of action was assigned for one dollar to one who had no prior connection with the matter; that the assignee simultaneously reassigned a 95% interest to the assignor; and that the assignee admitted that the assignment was largely motivated by a desire to make diversity jurisdiction available. *Kramer,* 394 U.S. at 827–28, 89 S.Ct. at 1489–90.

11. The long abandoned test of *Corabi v. Auto Racing, Inc.,* 264 F.2d 784 (3d Cir.1959) (en banc), defined collusion in terms of an agreement between opposing sides of a litigation. *See id.* at 788. *Kramer* conclusively establishes that this narrow reading of collusion is passé.

der appointment of an out-of-state administrator or guardian "improper" or "collusive." *Id.* at 828 n. 9, 89 S.Ct. at 1490 n. 9. The Court offered possible distinctions between appointments of representatives and assignments of claims:

Cases involving representatives vary in several respects from those in which jurisdiction is based on assignments: (1) in the former situation, some representative must be appointed before suit can be brought, while in the latter the assignor normally is himself capable of suing in state court; (2) under state law, different kinds of guardians and administrators may possess discrete sorts of powers; and (3) all such representatives owe their appointment to the decree of a state court, rather than solely to an action of the parties. It is not necessary to decide whether these distinctions amount to a difference for purposes of § 1359.

*Id.*[12]

### C. *Application of Section 1359 in Wrongful Death Cases*

#### 1. *Introduction*

The circuits have adopted different tests, as detailed below, for application of section 1359 in light of *Mecom* and *Kramer*. Additionally, commentators have suggested alternative tests that have yet to be adopted by the courts. The Second, Third, Fifth, and Sixth Circuits have adopted a "motive/function" test. *See* Mullenix, 70 Cornell L.Rev. at 1032 n. 117.[13] The "substantial stake" test has been accepted by the Fourth, Seventh, Eighth, and Tenth Circuits. *See id.* at 1034 n. 129. As we shall elaborate, both the motive/function test and the substantial stake test require subjective evaluation of a variety of factors. This is especially true for the motive/function test, which requires a court to examine states of mind. Although triers of fact are required to evaluate states of mind under many circumstances, the determination is difficult to make and subjective tests may encourage fraud. *See generally* Note, *Manufactured Federal Diversity Jurisdiction and Section 1359*, 69 Colum.L.Rev. 706, 724 (1969). To avoid the pitfalls of subjective tests, some commentators have recommended adoption of per se rules.

Thus, the American Law Institute (ALI) has proposed that diversity be measured by

---

**12.** The Second Circuit found the three potential distinctions unavailing to the plaintiff in *O'Brien v. AVCO Corp.*, 425 F.2d 1030, 1035–36 (2d Cir. 1969). As to the third distinction—representatives owe their appointments to state court decrees rather than solely to actions of parties—*O'Brien* observed that *Kramer* "could not have meant that the state court decision is immune from collateral attack," *id.* at 1036, since the Court rejected the contention "that the undisputed legality of the assignment under Texas law necessarily rendered it valid for purposes of federal jurisdiction," 394 U.S. at 829, 89 S.Ct. at 1490. In addition, *O'Brien* was skeptical that state courts, in appointing administrators, "act[ ] independently for purposes other than manufacturing diversity...." 425 F.2d at 1036. *See McSparran*, 402 F.2d at 874 (federal court does not impugn collaterally state court decree appointing a guardian by declining diversity jurisdiction: "Guardian he remains, but since he is acting in the capacity of a straw party we refuse to recognize his citizenship for purposes of determining diversity jurisdiction."); *cf. Betar v. De Havilland Aircraft of Canada, Ltd.*, 603 F.2d 30, 34 (7th Cir.1979) ("Since the decision in *Kramer*, however, the Courts of Appeals have accorded little weight to these suggested distinctions and have followed the Third Circuit decision in *McSparren [sic]*."), *cert. denied*, 444 U.S. 1098, 100 S.Ct. 1064, 62 L.Ed.2d 785 (1980).

**13.** The Fourth Circuit applied the motive/function test in *Lester v. McFaddon*, 415 F.2d 1101 (4th Cir.1969), but apparently abandoned it in *Bishop v. Hendricks*, 495 F.2d 289 (4th Cir.1974), *cert. denied*, 419 U.S. 1056, 95 S.Ct. 639, 42 L.Ed.2d 653 (1975). Section 1359 continues to engender dispute within the Fourth Circuit. *Compare Krier-Hawthorne v. Beam*, 728 F.2d 658, 661–62 (4th Cir.1984) (citizenship of personal representative who has more than nominal role is decisive) *with id.* at 671–72 (Murnaghan, J., dissenting) (urging adoption of American Law Institute rule that citizenship of decedent controls); *and Vaughan v. Southern Railway*, 542 F.2d 641, 643–44 (4th Cir.1976) (citizenship of beneficiaries of wrongful death claim controls) *with id.* at 645 (Butzner, J., dissenting) (majority decision, though motivated by laudable desire for symmetry and reform, is supported by neither statute nor precedent). We are not the first to observe that "[t]he situation in the Fourth Circuit is unclear." *Wilsey v. Eddingfield*, 780 F.2d 614, 618 (7th Cir.1985) (Posner, J., dissenting), *cert. denied*, —— U.S. ——, 106 S.Ct. 1660, 90 L.Ed.2d 202 (1986).

the decedent's citizenship. American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts § 1301(b)(4), at 11 (1969), *reprinted in* Field, *Jurisdiction of Federal Courts: A Summary of American Law Institute Proposals*, 46 F.R.D. 141, 143 (1969). In contrast, Professor Mullenix argues that the beneficiaries' citizenship should control jurisdiction. Mullenix, 70 Cornell L.Rev. at 1044. This court has yet to adopt a test for the construction of section 1359.

### 2. *The Motive/Function Test*

Here, the district court relied heavily on *McSparran v. Weist*, 402 F.2d 867 (3d Cir. 1968) (en banc), *cert. denied*, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969), which constitutes the paradigmatic statement of the motive/function test. *See* 621 F.Supp. at 766–69. *McSparran* departed from the Third Circuit's prior reading of "improperly or collusively," as used in section 1359, and held that "[t]he impropriety is not any conduct between the plaintiff and the defendant," but that collusion exists when the fiduciary and the applicant for his appointment seek an artificial appointment for the purpose of creating diversity jurisdiction. 402 F.2d at 873. The Third Circuit rejected the notion that courts should not inquire into the motives for appointment of the guardian or other representative:

> While, of course, the desire to obtain diversity jurisdiction is not in itself improper, nevertheless it is not irrelevant in the determination of the question whether the fiduciary is in fact a straw fiduciary whose citizenship is to be disregarded. Moreover, it is difficult to see how

motive can be entirely ignored in ascertaining the purpose for which the representative is selected in view of the language of § 1359. The statute outlaws the creation of jurisdiction where a party has been improperly or collusively made or joined to invoke the jurisdiction of the court. While the statute does not ban the appointment of non-resident fiduciaries, the artificial selection of a straw representative who has no duty or function except to offer the use of his citizenship to create diversity in contemplated litigation is a violation of its provisions.

*Id.* at 874–75 (footnote omitted). In *McSparran,* the court found nothing more than "a naked arrangement for the selection of an out-of-state guardian in order to prosecute a diversity suit," *id.* at 875, and emphasized that the essentially local nature of the controversy stemming from an automobile accident removed one of the conceptual underpinnings of diversity jurisdiction—preventing discrimination against out-of-state litigants, *id.* at 876.[14]

*McSparran* has been quite influential.[15] *See, e.g., Gross v. Hougland,* 712 F.2d 1034, 1038 (6th Cir.1983) (plaintiff must show primary purpose for appointment of fiduciary is not to manufacture diversity; citing *McSparran* ), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 684 (1984);[16] *Bass v. Texas Power & Light Co.,* 432 F.2d 763, 767 (5th Cir.1970) (courts can no longer apply the mechanically efficient rule of *Corabi v. Auto Racing, Inc.,* 264 F.2d 784 (3d Cir.1959) (en banc), and cannot yet apply the equally efficient ALI proposal, but must "work the matter out" under

**14.** The Third Circuit later amplified the *McSparran* test. *Groh v. Brooks,* 421 F.2d 589, 595 (3d Cir.1970) (court may consider identity of representative and relationship to party represented; scope of representative's powers and duties; representative's special capacity or experience; existence of non-diverse party more normally expected to represent interests involved; reasons expressed by those seeking appointment of the administrator; and whether suit is wholly local in nature).

**15.** The opinion has also been called "durable." *Bianca v. Parke-Davis Pharmaceutical Division*

of *Warner-Lambert Co.,* 723 F.2d 392, 394 (5th Cir.1984).

**16.** *Gross* goes on to say that the subjective purpose for the appointment is not the sole factor, 712 F.2d at 1038, because the court should consider what duties the fiduciary has besides prosecuting the lawsuit; whether he is a "natural" representative; whether his appointment was in fact motivated by a desire to create diversity; and whether the suit is local in character, *id.* at 1039.

*Kramer* and *McSparran* ), *cert. denied,* 401 U.S. 975 (1971); *O'Brien v. AVCO Corp.,* 425 F.2d 1030, 1036 (2d Cir.1969) (former Second Circuit rule of *Lang v. Elm City Construction Co.,* 324 F.2d 235, 236 (2d Cir.1963) (per curiam), which relied on *Corabi,* is vitiated by *Kramer* and *McSparran* ).

The motive/function test seems intuitively correct, because it attempts to weed out cases that have found their way into federal court solely because of artifice. Unfortunately, the subjectivity of the test will often require extensive factfinding,[17] and the test may fail to promote the purposes of diversity jurisdiction insofar as it expels from federal court litigants from different states who have a real, substantial controversy, Mullenix, 70 Cornell L.Rev. at 1033–34.

### 3. *The Substantial Stake Test*

The difficulties inherent in the motive/function test have led some courts to apply the "substantial stake" test, under which, "if a representative has more than a nominal interest in the litigation, his appointment in not proscribed by [section 1359]," *id.* at 1034 (footnote omitted). Thus, in *Bishop v. Hendricks,* 495 F.2d 289 (4th Cir.1974), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 639, 42 L.Ed.2d 653 (1975), the Fourth Circuit noted that the courts should evaluate the reasons for the appointment in order to determine whether "the fiduciary sustains more than a nominal relationship to the litigation," *id.* at 294 (footnote omitted), or "possesses 'no stake in the litigation,'" *id.* at 295 (footnote omitted) (citing *Dougherty v. Oberg,* 297 F.Supp. 635, 639 (D.Minn.1969)). The administrator in *Bishop* had "nothing to gain by the suit save a fee for the use of his name if successful, and, if the suit is lost, nothing to lose." *Id.*

(footnote omitted). The court added that the beneficiaries chose counsel to try the wrongful death claim, that this choice was "substantially the only function the administrator in a case such as this would perform," and that the administrator was therefore no more than a "straw party" whose appointment could not support diversity jurisdiction. *Id.* at 296.

In *Bettin v. Nelson,* 744 F.2d 53 (8th Cir.1984), the court upheld diversity jurisdiction where the decedent's out-of-state parents were appointed as co-administrators. The Eighth Circuit, while citing *McSparran,* found that the parents, "although not the beneficiaries of the court actions, are *interested persons* entitled to have their appointments respected in determining diversity jurisdiction." *Id.* at 56 (emphasis added). This conclusion rested on (1) the possibility that the parents could recover, from the proceeds of the wrongful death actions, burial expenses they had advanced and (2) the existence of the parental relationship. *Id.*[18]

*Hackney v. Newman Memorial Hospital, Inc.,* 621 F.2d 1069, 1071 (10th Cir.), *cert. denied,* 449 U.S. 982, 101 S.Ct. 397, 66 L.Ed.2d 244 (1980), observed that courts had found appointment of straw parties collusive but had, in dictum, left open the possibility that jurisdiction would exist if the representative had a "substantial relationship to the litigation." *Hackney* accepted the dictum and found that the appointment of plaintiff, out-of-state daughter of the decedent and successor to her in-state sister as administratrix, did not violate section 1359. The court noted that Oklahoma law gave full control over the suit to the administratrix, as opposed to the beneficiaries, *id.* at 1071, and that plaintiff was to be a beneficiary of the suit, *id.* The

---

17. Then Chief Judge Haynsworth of the Fourth Circuit testified that current judicial applications of section 1359 result in " 'a dreadful waste of time.' " *Hearings before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary on S. 1876,* 92d Cong., 1st Sess. 163 (1971) (quoted in 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3640, at 128 (2d ed. 1985)).

18. The court added that the parents had a sufficient "stake" to satisfy section 1359 even though their claim of burial expenses was for less than the amount in controversy requirement of more than $10,000. *Bettin,* 744 F.2d at 56 n. 5.

Tenth Circuit characterized plaintiff as having "a real, substantive stake in the litigation," *id.*, and held "immune from challenge, for diversity purposes, an appointment of a fiduciary who has a substantial beneficial interest in the litigation being conducted," *id.*

To the same effect is *Betar v. De Havilland Aircraft of Canada, Ltd.*, 603 F.2d 30 (7th Cir.1979), *cert. denied*, 444 U.S. 1098, 100 S.Ct. 1064, 62 L.Ed.2d 785 (1980). There, the Seventh Circuit ordered remand to state court of an action removed by defendant on diversity grounds. Plaintiff, a public administrator diverse from the defendant, objected to removal, arguing that the test is not his citizenship but that of the statutory beneficiaries of the action. *Id.* at 32. Although *Betar* does not construe section 1359, because plaintiff argued *against* diversity rather than for it, language in the opinion of the court indicates that the court looked to the substantiality of the named plaintiff's stake in the outcome. *Id.* at 35. The court concluded that since the plaintiff lacked the requisite stake in the outcome to invoke diversity jurisdiction when he commenced the action, the defendant was similarly not entitled to remove the action. *Id.* at 36.[19]

It should not be surprising that cases applying the substantial stake test have cited *McSparran*, since one way to determine whether a party has a substantial stake in an action is to inquire into the motives for appointing that party as a fiduciary. Likewise, cases applying the motive/function test may examine a party's stake in the outcome as a clue to the reasons for his appointment. Thus, the two subjective tests that have been applied by the courts of appeals may often be blended

into an ad hoc balancing approach. Usually, it will make no difference which test is applied, because there usually will be a proper, non-collusive motive for appointment of a fiduciary who has a substantial stake in the outcome. But it is possible that in some cases a party might pass the motive/function test while failing the substantial stake test, or vice versa. *See Bianca v. Parke-Davis Pharmaceutical Division of Warner-Lambert Co.*, 723 F.2d 392, 398–99 (5th Cir.1984) (although "it is apparent that Bianca has no substantial stake in the outcome of the wrongful death action," dismissal is reversed and district court is instructed on remand to test for motive "with substantiality of stake a relevant but not controlling indicator").[20]

Professor Mullenix has summarized the criticism of the substantial stake test:

Critics of the substantial stake test argue that it is philosophically unsound and inconsistent with [section 1359]. Under this approach, a court may sustain diversity jurisdiction when an administrator has a substantial stake in the litigation, even if the court finds that he was chosen in order to create diversity. Conversely, jurisdiction can be denied when a fiduciary was not appointed to manufacture diversity, if the administrator lacks the requisite substantial stake required to prosecute the wrongful death action. These critics characterize the substantial stake test as judicially-created control over diversity jurisdiction that intrudes on the congressional prerogative to determine the scope of diversity jurisdiction. Thus, they argue, a court cannot prohibit an administrator's access to a federal court just because he lacks a certain interest, that is, whether or not

---

19. Three judges of the Seventh Circuit, dissenting from denial of an in banc hearing, argued that *Betar* should be overruled. *Wilsey v. Eddingfield*, 780 F.2d 614, 618 (7th Cir.1985) (Posner, J., joined by Eschbach & Easterbrook, JJ., dissenting), *cert. denied*, — U.S. —, 106 S.Ct. 1660, 90 L.Ed.2d 202 (1986). Justices White, Brennan, and Marshall dissented from denial of *certiorari*, — U.S. at —, 106 S.Ct. at 1660, 90 L.Ed.2d 202, thus leaving the issue one vote short of consideration by the Supreme Court.

20. The Fifth Circuit considered the possibility of abandoning the motive/function test in favor of the substantial stake test, which it found attractive. The court held, however, that the language of section 1359 mandated adherence to the motive/function test. *Bianca*, 723 F.2d at 397–98.

he has a substantial stake in the outcome of the litigation.

In addition, the critics argue that the substantial stake jurisdictions incorrectly emphasize the substantive validity of an appointment, ignoring inquiries into motive. The plain language of [section 1359] suggests that the motives underlying a representative's appointment must govern the jurisdictional inquiry. If the representative is not appointed solely to manufacture diversity, then his lack of stake in the litigation alone cannot trigger the prohibition against manipulatively-created jurisdiction. The substantial stake test therefore improperly engrafts a jurisdictional requirement on parties that is not mandated by statute or the Constitution. As such, the test is an impermissible exercise of judicial power.

Mullenix, 70 Cornell L.Rev. at 1036–37 (footnotes omitted).[21]

### 4. *The Per Se Rules*

### a. *The ALI Proposal*

The American Law Institute's proposal that diversity be governed by the citizenship of the decedent[22] has found at least one judicial supporter. In *Krier-Hawthorne v. Beam*, 728 F.2d 658 (4th Cir. 1984), Judge Murnaghan argued in dissent that the court should answer in the negative the following question: " 'Should federal jurisdiction ... depend on the fortuitous circumstance that one party to the controversy happened to die before the controversy reached the litigation stage?' " *Id.* at 670–71 (Murnaghan, J., dissenting) (quoting Cohan & Tate, *Manufacturing Federal Diversity Jurisdiction by the Appointment of Representatives: Its Legality and Propriety*, 1 Vill.L.Rev. 201, 214 (1956)). He concluded that diversity jurisdiction was designed to protect outsiders from prejudice; that prejudices, should they exist, will most likely be based "on the identities of the actual actors in the disputed event or transaction, not the identities of the persons supervising the litigation of the dispute"; and that the ALI proposal should therefore be judicially adopted. *Id.* at 671–72 (Murnaghan, J., dissenting).[23]

The virtues of the ALI proposal are clear: (1) it becomes virtually impossible to manipulate diversity jurisdiction, Mullenix, 70 Cornell L.Rev. at 1038; (2) it keeps federal courts out of essentially local disputes, *id.*; (3) it eliminates the need for inquiry into the motives behind an appointment or the substantiality of the representative's stake in the litigation, *id.* at 1038–39; 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3640, at

---

**21.** Like the motive/function test, the substantial stake test may be said to squander judicial resources. *See* 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3640, at 128 (2d ed. 1985).

**22.** The ALI proposal states:

An executor, administrator, or any person representing the estate of a decedent or appointed pursuant to statute with authority to bring an action for wrongful death is deemed to be a citizen only of the same state as the decedent; and the representative of an infant or incompetent is given similar treatment. The purpose is to prevent either the creation or destruction of diversity jurisdiction by the appointment of a representative of different citizenship from that of the decedent or person represented.

American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts § 1301(b)(4), at 11 (1969), *reprinted in* Field, *Jurisdiction of Federal Courts: A Summary of American Law Institute Proposals*, 46 F.R.D. 141, 143 (1969).

**23.** Previously, in *Messer v. American Gems, Inc.*, 612 F.2d 1367, 1375–76 n. 11 (4th Cir.), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980), Judge Murnaghan, writing for the court, spoke approvingly of, without adopting, the ALI proposal. *Accord Miller v. Perry*, 456 F.2d 63, 68 (4th Cir.1972) (Haynsworth, C.J.) (until legislative adoption of ALI proposal, "an event much to be hoped," court is limited to "less satisfactory resolution"); *White v. Lee Marine Corp.*, 434 F.2d 1096, 1099 n. 8 (5th Cir. 1970) (ALI's simple rule is convenient, but may be adopted only by legislative action); *O'Brien v. AVCO Corp.*, 425 F.2d 1030, 1035 (2d Cir. 1969) ("While we do not deem it wise to create by judicial legislation the equivalent of the American Law Institute proposals, we feel the recommendations approved by such a distinguished group of scholars to be strong evidence of the type of abuse at which the present section 1359 was directed.").

129 (2d ed. 1985); and (4) it does away with the necessity of analyzing real party in interest considerations, Mullenix, 70 Cornell L.Rev. at 1039. A difficulty with the proposal, however, is that it might exclude parties who had legitimate reasons for appointing an out-of-state representative. *See* Note, *Manufactured Federal Diversity Jurisdiction and Section 1359*, 69 Colum.L.Rev. 706, 726 (1969).

### b. *The Mullenix Proposal*

As an alternative to the ALI proposal, Professor Mullenix suggests a per se rule that the citizenship of the beneficiaries should control diversity jurisdiction. Mullenix, 70 Cornell L.Rev. at 1044. She contends that such a rule would do away with the subjective factfinding required by the motive/function and substantial stake tests, while more nearly effecting the goals of diversity jurisdiction. *Id.* Professor Mullenix argues that her proposal is superior to the ALI's, because:

> Testators are likely to name the natural objects of their bounty as beneficiaries, rather than selecting them with creating diversity jurisdiction in mind. Beneficiaries are designated well in advance of any anticipated litigation or are designated by law if the decedent dies intestate. Therefore, collusion or improper joinder of parties to manipulate diversity jurisdiction is unlikely.

*Id.* (footnote omitted.).[24]

Of course, this per se rule might exclude from federal court resident beneficiaries who have a good reason to seek appointment of an out-of-state representative. Additionally, it is at least theoretically possible that such beneficiaries might encounter prejudice in state court because the named plaintiff is from outside the state. The same potential difficulty is inherent in the ALI proposal.

### D. *Application of the Principles to the Present Facts*

■ Our lengthy discussion of the tests used to interpret section 1359 makes it clear that the state of the law is anything but settled. It is not necessary today for us to choose a specific test—or, indeed, to direct the district courts to combine the tests or to weigh various factors on a case-by-case basis. This is because all tests compel dismissal of the present action.[25]

We begin with the per se tests, which, as their advocates maintain, are easy to apply. The ALI test looks to the citizenship of the decedent, Betty Ann Michaud. Because she resided in Massachusetts, complete diversity is lacking, and dismissal would be required. Professor Mullenix's citizenship

---

**24.** In at least two cases, the citizenship of the beneficiaries controlled. In *Messer v. American Gems, Inc.,* 612 F.2d 1367 (4th Cir.), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980), a North Carolina administratrix brought a wrongful death action in federal court against a North Carolina defendant. Although the district court dismissed for want of diversity jurisdiction, the court of appeals reversed, since the administratrix had "no stake in the matter" and the nonresident "beneficiaries ha[d] all the substantive interest in the case." *Id.* at 1374. Speaking of the beneficiaries, the court concluded: "Their citizenship controls, and confers diversity jurisdiction." *Id.* (footnote omitted). In *Miller v. Perry,* 456 F.2d 63, 68 (4th Cir.1972), the court relied on the citizenship of the beneficiaries rather than that of their representative.

**25.** Our reluctance to choose a test or tests at this time stems from several factors. As stated in the text, this action must be dismissed no matter which test is applied. Thus, to choose a test now would be analogous in some ways to deciding an abstract question rather than a live case or controversy. *Cf. Anderson v. United States,* 417 U.S. 211, 218, 94 S.Ct. 2253, 2259, 41 L.Ed.2d 20 (1974) ("We think it inadvisable ... to reach out ... to pass on important questions of statutory construction when simpler, and more settled, grounds are available for deciding the case at hand."); *Potomac Passengers Ass'n v. Chesapeake & Ohio Railway,* 520 F.2d 91, 97 (D.C.Cir.1975) ("A litigant cannot invoke federal jurisdiction merely to determine by which rationale he loses.") (footnote omitted). Moreover, the parties have not argued the relative merits of the various tests, and it would be unfortunate if we were to adopt a rule for the circuit on an issue that has not been fully briefed and argued. Conceivably, there will be cases in which different tests produce different results. Such cases provide the best opportunity for us to resolve the issue. Needless to say, it is also possible that Congress or the Supreme Court may decide the question before we must.

of the beneficiary test mandates the same result, since the only beneficiary of Mrs. Michaud's estate, Donald Michaud, also resided in Massachusetts.[26]

The result is no different under the substantial stake test. Carol Pallazola, who had never even met Mrs. Michaud, had nothing to gain if the wrongful death action was successful, and nothing to lose if it was not. In short, she lacks a substantial stake in the outcome.

There are more factors to consider when applying the motive/function test of *McSparran* and its progeny, but, once again, our conclusion is the same. Initially, we note that the district court's findings of fact may not be set aside unless clearly erroneous, and we must give due regard to the trial court's opportunity to judge the credibility of witnesses. Fed.R.Civ.P. 52(a).[27] Among other things, the evidence showed that Pallazola relied solely on the assurances of the decedent's sister, Dorothy Waselchuk, in ascertaining the estate's debts or assets; that Pallazola may not settle the claim without Donald's consent; that she has no duties besides prosecuting this suit; that she did not hire counsel— and indeed did not meet her attorneys before the evidentiary hearing; that Pallazola kept no written records on the estate; that she brought no special capacity or experience to her appointment; that Waselchuk paid the debts of her sister's estate, disposed of the estate's limited assets, engaged counsel to pursue this action, and assisted counsel in answering interrogatories. There was ample factual support for the district court's conclusion that Wasel-

chuk "has in many respects been the principal actor in handling the malpractice action and other aspects of the estate of her sister...." 621 F.Supp. at 764. Thus, like the other three tests, the motive/function test dictates dismissal of the action.

Accordingly, the district court was correct to dismiss the action. In addition, the court properly held that this case, unlike *Lester v. McFaddon*, 415 F.2d 1101, 1106 (4th Cir.1969), was not a proper instance for prospective enforcement of a jurisdictional ruling. 621 F.Supp. at 768–69. Quite apart from the Supreme Court's post-*Lester* statement that "a jurisdictional ruling may never be made prospective only," *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981), it must be recalled that this action had to be dismissed regardless of which jurisdictional test was applied.[28] Given these circumstances, Pallazola was not an unwitting plaintiff trapped by a new jurisdictional rule, and prospective enforcement would have been inappropriate.

### III. *Timing of Dismissal*

■ Having concluded that dismissal was proper, we next consider whether its timing was correct. More specifically, defendants June Pickering Nurses Registry, Michael Schwartz, and Charles Peters contend on their cross-appeals that they were entitled to a judgment of dismissal on the merits before the jurisdictional issue was reached, because of their exoneration by a medical malpractice tribunal and Pallazola's failure to post the bonds necessary to continue the action. The defendants also argue collectively that the district court

---

**26.** We see no error in the district court's conclusion that Donald, though attending college in New York when this action was commenced, was a citizen of Massachusetts. As the court noted, Donald "lived in a school dormitory, returned home to Massachusetts for school vacations, registered his car in Massachusetts, and registered to vote in Massachusetts." 621 F.Supp. at 769.

**27.** *See O'Toole v. Arlington Trust Co.,* 681 F.2d 94, 98 (1st Cir.1982); *Hawes v. Club Ecuestre El Comandante,* 598 F.2d 698, 702 (1st Cir.1979). Although, by its terms, rule 52(a) applies to findings following a trial, the policies advanced

by the rule apply equally to a pretrial hearing. *Cf. Maine v. Taylor,* — U.S. —, —, 106 S.Ct. 2440, 2450, 91 L.Ed.2d 110 (1986) (considerations underlying rule 52(a)—demands of judicial efficiency, expertise developed by trial judges, and importance of first-hand observation—also apply in criminal context).

**28.** Nor were the applicable tests formulated after Pallazola instituted this action or after the statute of limitations had run, since the motive/function and substantial stake tests were well established before this action was commenced.

erred in referring the action to a state court rather than entering an immediate judgment of dismissal upon its finding that subject matter jurisdiction was lacking. Pallazola replies that the propriety of the referral to state court is a nonjusticiable issue and that the district court acted properly, in any event, when it referred this action to the state court.

## A. *Pickering, Schwartz, and Peters*

On October 9, 1985, the district court refused to entertain the requests of defendants Pickering, Schwartz, and Peters for separate entry of judgment in their favor. They sought a judgment on the merits—rather than the judgment based on the absence of subject matter jurisdiction to which all defendants were entitled—because of their exoneration by a medical malpractice tribunal and plaintiff's subsequent failure to post the bonds necessary to continuing her action against them.

The district court, refusing to enter separate judgments, stated:

> Now, you see, you're asking me to issue a judgment that would determine the merits. That's what you're asking me to do. And if I do not have diversity jurisdiction, I cannot enter a judgment that adjudicates the merits.... When I later ... determine [that I was without jurisdiction], I have to enter an order that has the effect of wiping out any adjudication I made ... while under the erroneous understanding that I had diversity jurisdiction.

This was a correct statement of the law. Even though the court had previously ordered dismissal of the action as to Peters, Schwartz, and Pickering, 602 F.Supp. at

464, judgment had not yet been entered. Before separate judgments could be entered, the court determined that it lacked subject matter jurisdiction. In the absence of subject matter jurisdiction, the court was required immediately to dismiss the action [29]—on jurisdictional grounds, not on the merits. Thus, the district court could not have entered separate judgments on the merits in favor of Pickering, Schwartz, and Peters.[30]

## B. *Referral to State Court*

A more troubling question is whether the district court erred in referring the action to a state court and, if it did, what can be done about the error. Under the case or controversy requirement of article III of the Constitution, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969). *See Berskshire Cablevision of Rhode Island, Inc. v. Burke*, 773 F.2d 382, 384 (1st Cir. 1985). Stated otherwise, "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) (per curiam). After the Massachusetts court accepted the referral and the district court dismissed the federal action, the lawsuit left our bailiwick.[31] Given this situation, the question arises whether there is a live case or controversy for us to decide.

If we were to adopt the defendants' suggestion and hold that the referral was error, the most we could do is order the district court to vacate its order of referral.

---

**29.** *See* Fed.R.Civ.P. 12(h)(3); *Grand Blanc Education Ass'n v. Grand Blanc Board of Education,* 624 F.2d 47, 49 n. 4 (6th Cir.1980); *Dantes v. Western Foundation Corp. Ass'n,* 614 F.2d 299, 301 (1st Cir.1980).

**30.** We need not predict what the Massachusetts courts will choose to do with Pallazola's claims against Pickering, Schwartz, and Peters—assuming they permit Pallazola to pursue her wrongful death action at all. The courts of the commonwealth, applying Massachusetts law, no

doubt will give whatever weight they deem appropriate to the malpractice tribunal's exoneration of these three defendants and Pallazola's failure to post bonds.

**31.** Of course, there is no question that we were permitted to consider Pallazola's appeal because, had she been successful, the district court's order of dismissal would have been reversed and the federal action reinstated.

Whether or not this would have an effect on the Massachusetts courts is impossible to know, since the state courts could decide that, as a matter of state law, they nevertheless retain jurisdiction. Thus, a decision that the district court erred would be no more than an advisory opinion, which we are powerless to issue. *See id.; Flast v. Cohen*, 392 U.S. 83, 96, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968); *Muskrat v. United States*, 219 U.S. 346, 351–53, 31 S.Ct. 250, 251–53, 55 L.Ed. 246 (1911); *accord Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937) (controversy must admit of specific relief through conclusive decree, as opposed to opinion advising what the law would be upon hypothetical state of facts).

■ Withal, a matter may not be moot, provided it is "capable of repetition, yet evading review." *See, e.g., Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973); *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). In the absence of a class action, however, this exception to the mootness doctrine requires two predicates: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the *same complaining party* would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam) (emphasis added). Thus, "[t]he possibility that *other persons* may litigate a similar claim does not save [a] case from mootness." *Lane v. Williams*, 455 U.S. 624, 634, 102 S.Ct. 1322, 1328, 71 L.Ed.2d 508 (1982) (emphasis added).

■ The defendants' contention is that, upon its finding that subject matter juris-

diction was lacking, the district court should have dismissed the action rather than referring it to state court. The possibility that the defendants will someday find themselves in the same situation is so remote that this is not a case "capable of repetition, yet evading review"; hence, the second element of the *Weinstein v. Bradford* test cannot be met. *Cf. DeFunis v. Odegaard*, 416 U.S. 312, 319, 94 S.Ct. 1704, 1707, 40 L.Ed.2d 164 (1974) (per curiam) (petitioner will never again run the gantlet of law school admission process); *Flynt v. Weinberger*, 762 F.2d 134, 135 (D.C.Cir. 1985) (per curiam) (no "reasonable expectation" that controversy regarding prohibition of press coverage of Grenada invasion would recur).[32] Accordingly, the cross-appeals, insofar as they challenge the referral of the federal action to state court, must be dismissed as moot, and we express no view on the propriety of the referral.

## IV. *Conclusion*

Insofar as the district court held that subject matter jurisdiction was lacking and thereafter declined to enter separate judgments in favor of Pickering, Schwartz, and Peters, its judgment is affirmed. The cross-appeals from the district court's referral of the action to state court are dismissed.

---

32. We recognize that the defendant Eugene Smith, joined by other defendants, moved a panel of this court for a stay of judgment pending appeal, arguing that "transmission of certified copies of the docket entries and pleadings to state court will render moot the issue of the propriety or the power of the federal court to refer the case to state court." The panel denied the motion, and, regrettably, the defendants' fears have been realized, because the question of the referral to state court is indeed moot.